IN THE

# United States Court of Appeals

## FOR THE NINTH CIRCUIT

WILLIAM AND JANE MARTZ,
as owners of a Nautique vessel for Limitation of Liability

*Plaintiffs—Appellants,*

v.

ANDREW HORAZDOVSKY,

*Claimant—Appellee.*

Appeal from the United States District Court
for the District of Alaska in
Case No. 3:20-cv-00152-SLG (Gleason, J.)

## APPELLANTS' MOTION FOR INJUNCTION PENDING APPEAL

Jonathon A. Katcher
POPE & KATCHER
421 West First Avenue, Suite 220
Anchorage, AK 99501
(907) 272-8577
jkatcher@alaska.net

Michael R. Williams
BUSH SEYFERTH PLLC
151 S. Rose St., Suite 707
Kalamazoo, MI 49007
(269) 820-4100
williams@bsplaw.com

*Attorneys for Plaintiffs—Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION .........................................................................................1

BACKGROUND ...........................................................................................2

ANALYSIS ...................................................................................................4

I.     The Martzes are entitled to an injunction under 46 U.S.C. § 30511(c) ..........5

II.    Alternatively, the Martzes are entitled to an injunction under Federal
       Rule of Civil Procedure 62(d) and Federal Rule of Appellate
       Procedure 8(a)(2) ................................................................................8

       A.     The Martzes' appeal is likely to succeed—or at least presents
              serious questions................................................................................9

       B.     The balance of the equities tips sharply in favor of the Martzes ........15

       C.     Absent an injunction, the Martzes will suffer irreparable harm. ........17

       D.     An injunction would serve the public interest ...................................20

CONCLUSION ..............................................................................................21

**TABLE OF AUTHORITIES**

**CASES**

*Alascom, Inc. v. ITT N. Elec. Co.,*
727 F.2d 1419 (9th Cir. 1984) ...................................................................17

*All. for the Wild Rockies v. Cottrell,*
632 F.3d 1127 (9th Cir. 2011) ....................................................................9

*Am. Bridge Co. v. Young,*
No. 2:08CV316, 2009 WL 10731052 (E.D. Va. May 13, 2009) ............... 1-2

*Artukovic v. Rison,*
784 F.2d 1354 (9th Cir. 1986) ..................................................................20

*Cal. Pharmacists Ass'n v. Maxwell-Jolly,*
563 F.3d 847 (9th Cir. 2009) ....................................................................18

*Calvillo Manriquez v. Devos,*
345 F. Supp. 3d 1077 (N.D. Cal. 2018)......................................................17

*Churchill v. F/V Fjord,*
5 F.3d 374 (9th Cir. 1993) ..........................................................................5

*Commodity Futures Trading Comm'n v. Hunt,*
591 F.2d 1211 (7th Cir. 1979).....................................................................8

*Compass Airlines, LLC v. Montana Human Rights*
*Bureau of the Dep't of Labor & Indus.,*
No. CV 12-105-H-CCL, 2012 WL 6477267 (D. Mont. Dec. 13, 2012).......15

*Complaint of Paradise Holdings, Inc.,*
795 F.2d 756 (9th Cir. 1986) ................................................................7, 20

*Delpit v. Comm'r,*
18 F.3d 768 (9th Cir. 1994) .........................................................................6

*Doxsee Sea Clam Co. v. Brown,*
13 F.3d 550 (2d Cir. 1994) ........................................................................10

*E. Bay Sanctuary Covenant v. Trump,*
      950 F.3d 1242 (9th Cir. 2020) ...................................................................18

*Feldman v. Arizona Sec'y of State's Office,*
      843 F.3d 366 (9th Cir. 2016) .....................................................................8

*hiQ Labs, Inc. v. LinkedIn Corp.,*
      938 F.3d 985 (9th Cir. 2019) ....................................................................20

*In re Allen N. Spooner & Sons, Inc.,*
      253 F.2d 584 (2d Cir. 1958) ................................................................12, 13

*In re Blessey Enterprises, Inc.,*
      No. CIV.A. 08-235-JJB, 2012 WL 1565347 (M.D. La. Apr. 30, 2012) .......19

*In re CF Indus., Inc.,*
      No. 80-92-A, 1981 WL 6769674 (M.D. La. June 11, 1981).........................5

*In re Complaint of McCarthy Bros. Co./Clark Bridge,*
      83 F.3d 821 (7th Cir. 1996) .....................................................................10

*In re Complaint of Ross Island Sand & Gravel,*
      226 F.3d 1015 (9th Cir. 2000) ...................................................................6

*In re Complaint of Vulcan Constr. Materials, LLC,*
      427 F. Supp. 3d 694 (E.D. Va. 2019) ........................................................10

*In re Deloach Marine Servs. LLC,*
      408 F. Supp. 3d 786 (W.D. La. 2019) ........................................................17

*In re Pac. Far E. Line, Inc.,*
      43 F.R.D. 283 (N.D. Cal. 1967) ................................................................8

*In re Rachel K., Inc.,*
      No. A95-0220-CV, 1996 WL 662495 (D. Alaska July 12, 1996) ...............10

*John Doe Agency v. John Doe Corp.,*
      488 U.S. 130 (1989).................................................................................20

*Lake Tankers Corp. v. Henn,*
    354 U.S. 147 (1957)......................................................................................20

*Lewis v. Lewis & Clark Marine, Inc.,*
    531 U.S. 438 (2001)......................................................................................7

*Michaels v. Internet Entm't Grp., Inc.,*
    5 F. Supp. 2d 823 (C.D. Cal. 1998)............................................................19

*Orion Marine Constr., Inc. v. Carroll,*
    918 F.3d 1323 (11th Cir. 2019).................................................................10

*Oswalt v. Resolute Indus., Inc.,*
    642 F.3d 856 (9th Cir. 2011)......................................................................9

*Petition of S. S S Co,*
    132 F. Supp. 316 (D. Del. 1955)................................................................21

*Pickle v. Char Lee Seafood, Inc.,*
    174 F.3d 444 (4th Cir. 1999).......................................................................6

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.,*
    944 F.2d 597 (9th Cir. 1991).....................................................................18

*Rhode v. Becerra,*
    445 F. Supp. 3d 902 (S.D. Cal. 2020)........................................................18

*Roman v. Wolf,*
    977 F.3d 935 (9th Cir. 2020).....................................................................13

*Se. Alaska Conservation Council v. United States Forest Serv.,*
    413 F. Supp. 3d 973 (D. Alaska 2019)................................................. 13-14

*Se. Alaska Conservation Council v. U.S. Army Corps of Engineers,*
    472 F.3d 1097 (9th Cir. 2006)..................................................................8, 9

*Serv. Employees Int'l Union v. United States,*
    598 F.3d 1110 (9th Cir. 2010)....................................................................7

iv

*Slack v. McDaniel,*
529 U.S. 473 (2000)......................................................................6

*State v. Phillips,*
470 P.2d 266 (Alaska 1970) .......................................................15

*Univ. of Hawai'i Prof'l Assembly v. Cayetano,*
183 F.3d 1096 (9th Cir. 1999) ...................................................15

*Yue v. Conseco Life Ins. Co.,*
282 F.R.D. 469 (C.D. Cal. 2012)...............................................19

**STATUTES**

6 U.S.C. § 30505 .............................................................................2

46 U.S.C. § 30511 ................................................................*passim*

**RULES**

Federal Rule of Appellate Procedure 8.............................................1

Federal Rule of Civil Procedure 62 ..............................................1, 4

**INTRODUCTION**

Congress passed the Limitation of Liability Act to prevent vessel owners from facing catastrophic liability only because their vessel was involved in an accident on the water. Limitation Plaintiffs William and Jane Martz ask only that the Court reinstate an injunction pausing state litigation against them while this Court determines whether the Limitation Act's protections apply to one such accident in Alaska. Without that limited protection, the Martzes will suffer the harms that Congress meant to preclude.

The Court should reinstate an injunction against other actions while the appeal is pending for at least two reasons. *First*, the Limitation Act itself contemplates that an injunction against other proceedings should continue so long as a limitations "action" has been "brought." 46 U.S.C. § 30511(c). The Martzes have brought such an action, and it remains pending so long as the appeal is. *Second*, the Martzes are entitled to an injunction under Federal Rule of Civil Procedure 62(d) and Federal Rule of Appellate Procedure 8(a)(2). This appeal presents—at a minimum—serious questions about how to interpret the Limitation Act. At the same time, the equities tip sharply in the Martzes' favor.

In short, the Court should grant this motion and enjoin related claims, including Andrew Horazdovsky's action in Anchorage Superior Court, until this Court decides the Martzes' appeal. *See, e.g.*, *Am. Bridge Co. v. Young*, No.

2:08CV316, 2009 WL 10731052, at *2 (E.D. Va. May 13, 2009) (reinstating injunction under the Limitation of Liability Act pending appeal).

## BACKGROUND

This action stems from a tragic boating accident in June 2018. The Martzes own a 21-foot 1998 Correct Craft Air Nautique. *See* Exhibit A at 2, ¶ 3. Their son Reagan was driving that vessel on Flat Lake in Alaska when it collided with an inflatable raft carrying Jennifer Horazdovsky, who then died. *See* Exhibit A at 3, ¶¶ 7–10. Jennifer's husband Andrew sued Jane, William, and several others in Anchorage Superior Court for wrongful death in June 2020. *Id.*

Just three weeks later, the Martzes filed this action under 46 U.S.C. § 30511. *See* Exhibit A. That statute allows a vessel owner to file a federal action to limit his liability for certain claims to "the value of the vessel and pending freight." 46 U.S.C. § 30505(a). The Martzes also asked the district court to enjoin anyone from prosecuting any claim pertaining to the boat accident, including the state-court suit, as the statute contemplates. *See* Docket 5. Recognizing that the Martzes had complied with the statutory requirements for such an injunction, 46 U.S.C. § 30511(c), the district court entered the requested injunction. *See* Exhibit B at 5.

Claimants (Andrew Horazdovsky in multiple capacities) moved for summary judgment and asked the district court to vacate its injunction. *See* Docket 19. The Martzes cross-moved for summary judgment. *See* Docket 24. Both motions

2

centered on the same basic issue: whether letters and emails exchanged between the parties' lawyers in 2018, *see* Exhibit C, triggered the six-month limitations period for actions like this one. *See* 46 U.S.C. § 30511(a) ("The [limitation] action must be brought within 6 months after a claimant gives the owner written notice of a claim."). Claimants argued that the letters constituted sufficient notice to start the limitations period running, making the Martzes' suit more than a year too late. Meanwhile, the Martzes argued that the correspondence was too ambiguous to constitute notice, especially when considered with express disclaimers and other actions from Claimants' counsel.

The district court held that the communications triggered the limitations period, warranting summary judgment for Claimants. *See* Exhibit D. The district court found that the communications' "serious tenor," their "broader context," and certain specific statements in a December 2018 letter from attorney Robert Stone were enough to say that Claimants had given notice. *See id.* at 23-27. Upon learning that the Martzes had no insurance, Mr. Stone told the Martzes' counsel that he did not sue uninsured people. Yet the district court found this statement "peripheral to the Court's analysis and of limited significance." *Id.* at 28. Thus, the district court granted Claimants' motion for summary judgment, denied the Martzes' cross-motion, and vacated its earlier injunction against the state action.

The Martzes noticed an appeal and sought an injunction from the district court, but the district court denied any injunction. *See* Exhibit E. The district court first held that 46 U.S.C. § 30511 did not require it to keep the injunction in place. *Id.* at 6-7. The Court believed it had discretion over whether to enter an injunction, and it declined to do so after having "[e]ffectively" found that "Limitation Plaintiffs had not brought a viable action under the statute." *Id.* at 7. The district court then rejected the Martzes' request under Federal Rule of Civil Procedure 62(d). The district court assumed that the Martzes had raised serious questions going to the merits but found that they would not be irreparably harmed. *Id.* at 10-12. The district also combined the equities and public-interest factors and held that the Martzes failed them, too. *Id.* at 12-14.

Without an injunction, Claimants have resumed proceedings against the Martzes in state court and are aggressively pressing their case forward.

**ANALYSIS**

For two separate reasons, the Court should reinstitute the injunction against other proceedings pending appeal. First, 46 U.S.C. § 30511(c) contemplates that an injunction should remain in place if an "action" under Section 30511 remains pending—and an action is pending so long as an *appeal* is pending. Second, the Martzes can establish all the ordinary elements for such an injunction under Federal Rule of Civil Procedure 62(d).

4

**I.     The Martzes are entitled to an injunction under 46 U.S.C. § 30511(c).**

"When an action has been brought under [46 U.S.C. § 30511] and the owner has complied with subsection (b) [of that section], all claims and proceedings against the owner related to the matter in question *shall* cease."  46 U.S.C. § 30511(c) (emphasis added).  To make that happen, Supplemental Rule F of the Federal Rules of Civil Procedure says that "the court *shall* enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action."  (emphasis added).  "The issuance of an injunction against other litigation is mandatory upon the Court where the statutory and other requirements have been met."  *In re CF Indus., Inc.*, No. 80-92-A, 1981 WL 6769674 (M.D. La. June 11, 1981); *see also Churchill v. F/V Fjord*, 5 F.3d 374, 376 (9th Cir. 1993) ("Once a vessel owner files a limitation bond, the owner is entitled to an injunction.").

The district court held that the Martzes had complied with 46 U.S.C. § 30511(b)'s requirements when it first issued the injunction.  *See* Exhibit B.  The Martzes filed a complaint and deposited security, so no one has ever argued that the Martzes did not meet the "subsection (b)" requirements.  The Court therefore appropriately entered the injunction.

The injunction should remain in place because the limitation action is still going on so long as an appeal is pending.  True, "[i]f the shipowner fails to establish

its right under the Limitation Act and limitation is therefore denied, the claimants are released to pursue their original claims in full." *Pickle v. Char Lee Seafood, Inc.*, 174 F.3d 444, 449 (4th Cir. 1999). And the district court was right that *it* has decided that the Martzes' action was not viable. *See* Exhibit E at 7. But the limitation issue has not been *finally* denied yet, so the district court's decision is only one step. As courts have explained in many other contexts, "an appeal is a continuation of the litigation started in the trial court[.]" *Slack v. McDaniel*, 529 U.S. 473, 481 (2000); *cf. Delpit v. Comm'r*, 18 F.3d 768, 770 (9th Cir. 1994) (explaining that an appeal from the Tax Court is a "continuation" of the proceeding). The Martzes' limitation action is therefore still pending and "brought." All the benefits that are required to run throughout the action—including the injunction—should continue.

In refusing to reinstate the injunction, the district court emphasized that it has discretion in staying other actions. *See* Exhibit E at 7. That is true to a point: the district court may dissolve an injunction against other actions *in certain specific circumstances when certain specific requirements are met*. When only a single claimant exists, for example, then the district court might dissolve the stay if that claimant stipulates to the limitation, waives the right to res judicata based on any judgment outside the limitation, and concedes the district court's exclusive jurisdiction on limitation issues. *See In re Complaint of Ross Island Sand & Gravel*, 226 F.3d 1015, 1017 (9th Cir. 2000). But if the relevant claimant does not take these

6

steps (and no other exception applies), then the district court cannot lift the injunction. *See id.* at 1018. Nobody took those steps here.

Ultimately, a court may dissolve an injunction under the Limitation of Liability Act only where "a vessel owner's right to seek limitation will [still] be protected." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 454 (2001). Yet no protections are in place for the Martzes; Claimants are now free to seek from the Martzes whatever relief in whatever form they want back in state court. What is more, Congress intended the district court's "broad injunctive power" "to ensure the orderly and effective operation of the Limitation Act." *Complaint of Paradise Holdings, Inc.*, 795 F.2d 756, 761 (9th Cir. 1986) (internal quotation marks omitted). Yet it would not be "orderly" and "effective" to take an on-again-off-again approach, where the district court could impose an injunction at the beginning, only for that court to lift it at the end of the district court proceedings, only for the Court of Appeals to reimpose it on appeal, only for the district court to perhaps lift it again on remand. The district court therefore had no discretion to vacate the injunction, leaving the Martzes unprotected. The statute speaks in "shall" terms when calling for the district court to issue an injunction, after all. *See Serv. Employees Int'l Union v. United States*, 598 F.3d 1110, 1113 (9th Cir. 2010) ("The word 'shall' is ordinarily 'The language of command.'").

In short, the Court should reinstate the injunction under 46 U.S.C. § 30511(c). If it does so, there's no need to even consider whether Rule 62(d)'s separate requirements are met. *Cf. In re Pac. Far E. Line, Inc.*, 43 F.R.D. 283, 285 (N.D. Cal. 1967) (explaining that the ordinary requirements for injunctions found in Rule 65 do not apply to injunctions issued under the Limitation of Liability Act); *see also Commodity Futures Trading Comm'n v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979) ("Actions for statutory injunctions need not meet the requirements for an injunction imposed by traditional equity jurisprudence.").

**II. Alternatively, the Martzes are entitled to an injunction under Federal Rule of Civil Procedure 62(d) and Federal Rule of Appellate Procedure 8(a)(2).**

"The standard for evaluating an injunction pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction." *Feldman v. Arizona Sec'y of State's Office*, 843 F.3d 366, 367 (9th Cir. 2016). "In deciding whether to grant an injunction pending appeal, the court balances the plaintiff's likelihood of success against the relative hardship to the parties." *Se. Alaska Conservation Council v. U.S. Army Corps of Engineers*, 472 F.3d 1097, 1100 (9th Cir. 2006) (internal quotation marks omitted). That balancing can happen in a few ways. "Under the 'traditional test,' the moving party must show: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to the plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the

8

plaintiff, and (4) advancement of the public interest (in certain cases)." *Id.* (internal quotation marks omitted). "The 'alternative test' requires that the moving party demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." *Id.* (internal quotation marks omitted).

Together, "the elements of the … test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Here, however, the Martzes can make strong showings on *all* the factors—so the Court should issue the injunction.

### A. The Martzes' appeal is likely to succeed—or at least presents serious questions.

The Martzes' appeal has a strong likelihood of success. This Court will review the district court's decision on summary judgment de novo. *See Oswalt v. Resolute Indus., Inc.,* 642 F.3d 856, 859 (9th Cir. 2011). It will take all the facts in the light most favorable to the Martzes. *Id.*

This appeal turns on the six-month statute of limitations for limitation actions. An owner must sue within "six months after a claimant gives the owner written notice of a claim" subject to limitation. 46 U.S.C. § 30511(a). Different circuits apply different tests in evaluating what constitutes sufficient "written notice" to start the six-month clock running. Under one test, sometimes called the *Doxsee/McCarthy* standard, "[n]otice will be sufficient if it informs the vessel owner

of an actual or potential claim ... which may exceed the value of the vessel ... and is subject to limitation." *Orion Marine Constr., Inc. v. Carroll*, 918 F.3d 1323, 1330 (11th Cir. 2019) (quoting *Doxsee Sea Clam Co. v. Brown*, 13 F.3d 550, 554 (2d Cir. 1994)); *see also In re Complaint of McCarthy Bros. Co./Clark Bridge,* 83 F.3d 821, 829 (7th Cir. 1996) (clarifying that the *Doxsee* test requires a notice to establish a "reasonable probability" that the claim will exceed the vessel's value and be thus subject to limitation). "The competing test," typically called the *Moreira* test, "requires only that the claimant's notice (1) demand a right or supposed right, (2) blame the vessel owner for any damage or loss, and (3) call on the vessel owner for anything due." *Orion*, 918 F.3d at 1330–31 (citing *Rodriguez Moreira v. Lemay*, 659 F. Supp. 89, 91 (S.D. Fla. 1987)). Between the two tests, it is generally easier for a notice to meet the *Moreira* test because "the '*Doxsee/McCarthy* test' entails an amount/value element that the '*Moreira* test' does not[.]" *Id.* at 1331.

This Court has never decided which test it will use. But no matter what test the Court settles on, a notice of a claim must communicate—impliedly or expressly—that the claimant will pursue something from the person receiving the notice. *See In re Complaint of Vulcan Constr. Materials, LLC*, 427 F. Supp. 3d 694, 698-701 (E.D. Va. 2019); *see also In re Rachel K., Inc.,* No. A95-0220-CV, 1996 WL 662495, at *1 (D. Alaska July 12, 1996) ("A common thread which appears to run through most of the cases … is a requirement that the writing delivered to the

10

owner make some demand of a right or a supposed right upon the vessel owner."). Neither Claimants nor the district court cited any authority holding otherwise.

Claimants mistakenly say that they gave notice in letters from their lawyers spanning several months. Yet those letters never made an express or implied claim or signaled that they were about to make one. Even the district court recognized that most were "focused on gathering information" rather than pursuing anything from the Martzes. Exhibit D at 25. The one letter that the district court relied on most— the December 2018 "Stone Letter"—seemed to take great pains to say it was *not* a demand. See Exhibit C-7 at 26. Attorney Robert Stone wrote to the Martzes' attorney and said that he was "not yet certain whether William Martz or Jane Martz bear *any* responsibility." *Id.* at 27 (emphasis added). He also wanted to "avoid unnecessarily naming parties to a lawsuit." *Id.* Mr. Stone next asked several questions about insurance coverage, the answers to which led to Mr. Stone's later representation that he would not sue someone lacking coverage, as the Martzes are. *Id.*; *see also* Exhibit C at 8, ¶ 12 (explaining that Mr. Stone told the Martzes' lawyer that it was "not his practice to sue people who were not insured"). The many other communications about insurance had much the same effect; each time the Martzes responded that they did not have coverage, it provided even more reassurance that they were <u>not</u> facing any claim. Insurance was like an unfulfilled condition precedent.

The district court looked at this, acknowledged that many communications were "tentative," Exhibit D at 26, but still found the notice sufficient. But the court appeared to err both in how it read the "Stone Letter" and how it read the applicable law. The letter did not ever "provide[] a theory by which Limitation Plaintiffs are liable," *id.* at 27; it noted only that Limitation Plaintiffs owned the Nautique but did not go any further than that. The letter "refers to a lawsuit," *id.*, but it simultaneously implied that the Martzes would not be involved in that suit unless they had insurance—which they did not. And the letter did not say that the Martzes' "responsibility is under investigation," *id.*; it said only that the lawyer was investigating *insurance coverage* of anyone tied to the incident. At most, then, the letter recited information without inferring liability from it, alluded to a lawsuit against *someone* (but not the Martzes specifically), and poked at whether insurance was available. No court has found sufficient notice in similar circumstances.

The district court thought it found an analogous precedent in *In re Allen N. Spooner & Sons, Inc.*, 253 F.2d 584, 585 (2d Cir. 1958), but the notice in that case included several provisions absent here. Among other things, the notice in *Spooner*:

- Forthrightly told the recipient: "[Y]ou were responsible for the fire, both because of negligence and because of the risks assumed by you";

- Explained that the claimant planned to withhold payments owed to the recipient until "disposition of the fire damage claim"; and

12

- Cautioned that the claimant was still "determining the *extent* [not the existence] of the claim" against the recipient.

*Id.* Again, Mr. Stone's letter only sought "clarification regarding a number of insurance coverage issues." Exhibit C-7 at 27. Even with those questions, Mr. Stone seemed focused on *Reagan* Martz (the Martzes' son and the boat's driver) rather than the Martzes themselves. *Id.* ("While I recognize that some of these policies may not specifically name Reagan Martz, I would [sic] you to construe each policy broadly to provide coverage to Reagan Martz[.]").

So the limitations period would not have started running here until the Martzes received their first definite sign of a claim—a lawsuit in Anchorage Superior Court filed just three weeks before the Martzes filed their federal limitation action. That would make this lawsuit timely. The Martzes therefore have a strong likelihood of success on their appeal.

"Further, where the balance of hardships tips sharply towards the plaintiff, a plaintiff need only show serious questions going to the merits, rather than likelihood of success on the merits, to warrant preliminary injunctive relief." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020) (internal quotation marks and alterations omitted). "Serious questions are substantial, difficult, and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Se. Alaska Conservation Council v. United States Forest Serv.*, 413 F. Supp. 3d 973, 979 (D.

Alaska 2019). "They need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance on the merits." *Id.* As explained below, the balance of the equities does tip sharply towards the Martzes. The Court can therefore enter an injunction on serious questions alone here.

Serious questions abound. This Court has never addressed what notice is sufficient. Exhibit D at 11. Without knowing what test will apply, it is even harder to evaluate the communications here. Even if one assumes that a court can blend the various tests together, or even if one dismissed the differences in these tests as immaterial, the facts here remain close. Conditional language fills the writings. The letters and emails require one to ask: When does a letter cross the line from information-gathering into a formal "notice"? How, if at all, should the Court consider the "tenor" and other intangible qualities of the writings? Is a reference to insurance the same as an instruction to put one's insurer on notice? Other oral communications and "extra-notice" materials provide context that could change the outcome. Can the Court consider these materials?

In short, even if this Court cannot agree that the Martzes are likely to prevail on appeal, this case still presents "substantial, difficult, and doubtful" issues that justify an injunction while they can get worked out.

**B.    The balance of the equities tips sharply in favor of the Martzes.**

The balance of the equities also tips sharply in the Martzes' favor. "To determine which way the balance of the hardships tips, a court must identify the possible harm caused by the preliminary injunction against the possibility of the harm caused by not issuing it." *Univ. of Hawai'i Prof'l Assembly v. Cayetano*, 183 F.3d 1096, 1108 (9th Cir. 1999).

Here, the possible harm caused by the injunction would be minimal. The injunction would not prevent Claimants from obtaining complete relief should they prove to be right about their suit's timeliness. The worst consequence would be delayed recovery. The parties and the Court can address that concern by pushing the appeal forward as soon as possible, as the Martzes have already sought to do (and will continue to do). What is more, potential remedies like prejudgment interest on a future judgment might dull the sting of needing to wait. *See, e.g.*, *State v. Phillips*, 470 P.2d 266, 273 (Alaska 1970) (holding that a plaintiff was "entitled to prejudgment interest on damages awarded in [a] wrongful death action"). Thus, Claimants' "position will be unchanged (despite a minor delay)." *Compass Airlines, LLC v. Montana Human Rights Bureau of the Dep't of Labor & Indus.*, No. CV 12-105-H-CCL, 2012 WL 6477267, at *5 (D. Mont. Dec. 13, 2012).

In contrast, the harm that would flow from *not* issuing the injunction would be substantial. The Martzes face substantial exposure exceeding the vessel's value

15

in the underlying wrongful death action. Yet the Martzes are a husband and wife of ordinary means. Only William works outside the home. No insurance policy covers Claimants' suit in state court, so the Martzes must pay out-of-pocket for litigation expenses and any eventual judgment. Paying those costs could force them to take extreme steps, including liquidating more personal assets beyond those that they have already had to sell. And the Martzes cannot recover that money once it is spent. Bankruptcy is possible. In short, their lives would be deeply affected in ways that the Limitation of Liability Act never contemplated.

The district court thought continuing the injunction could "significantly harm" Claimants because it could "interfere[e] with the ongoing discovery process." *See* Exhibit E at 13. Not even Claimants argued this point, and for good reason: there is no obvious way in which the injunction would affect *discovery* in the state court action. The injunction would reach only "claims and proceedings," 46 U.S.C. § 30511(c), not all matters of any kind relating to the Martzes. Even if there were a collateral effect on discovery, that effect might ultimately *benefit* Claimants; staying the state court action and all related discovery would allow Claimants to get a final answer on what potential recovery they might obtain from the Martzes before they decide whether to expend substantial resources pursuing that recovery. Discovery could also continue as to other parties, so the district court's allusion to "multiple defendants" is irrelevant. And though the district court expressed reluctance to

"prioritize" the limitation action ahead of the state court action, Congress already chose to do just that. *See, e.g.*, *In re Deloach Marine Servs. LLC*, 408 F. Supp. 3d 786, 788 (W.D. La. 2019) (explaining that, under the Act, "the protection of a vessel owner's right to limited liability is paramount").

The balance of the equities tips sharply in the Martzes' favor.

**C.     Absent an injunction, the Martzes will suffer irreparable harm.**

The Martzes would also suffer irreparable harm.  Indeed, failing to re-issue the injunction here could lead to at least three distinct harms.

*First,* litigation costs and, potentially, even a crippling judgment against them are perhaps the most obvious impacts.  Although courts do not usually consider costs like these irreparable harm, this case involves the unique situation of a statute specifically intended to shield owners like the Martzes from expending these items. Thus, the Martzes are not just losing money, they are losing some degree of the protection that Congress intended to give them—a protection akin to a partial immunity.  *Cf. Calvillo Manriquez v. Devos*, 345 F. Supp. 3d 1077, 1106 (N.D. Cal. 2018) ("Where sovereign immunity bars certain types of damages, those damages can constitute irreparable harm.").  In short, they must spend funds litigating claims in two separate forums even where Congress has said they deserve streamlined proceedings in federal court.  *Cf. Alascom, Inc. v. ITT N. Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984) (finding that litigation expenses associated with trying a claim

17

that should have been arbitrated could be irreparable harm because "speed and economy" would be lost if a "party must undergo the expense and delay of a trial before being able to appeal). And once spent, those funds are not recoverable, which further distinguishes them from garden-variety economic harms. *See Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852 (9th Cir. 2009), *vacated and remanded sub nom. on other grounds Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606 (2012) ("[E]conomic damages are not traditionally considered irreparable *because the injury can later be remedied by a damage award.*" (emphasis in original)); *see also E. Bay Sanctuary Covenant v. Trump,* 950 F.3d 1242, 1280 (9th Cir. 2020) ("[W]here parties cannot typically recover monetary damages flowing from their injury … economic harm can be considered irreparable.").

*Second*, the Martzes will suffer intangible injury. *See Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (explaining that "intangible injuries" that are difficult to value can constitute irreparable harm). Congress intended the Limitation of Liability Act to provide owners peace of mind that they will not face ruinous liability. Allowing the ongoing state suit and other proceedings to move forward right away would shatter that very peace of mind. And courts in this Circuit have recognized in many diverse contexts that losing "peace of mind" be irreparable harm. *See, e.g.*, *Rhode v. Becerra,* 445 F. Supp. 3d 902, 954 (S.D. Cal. 2020) (explaining that the loss of "peace of mind" that

comes from purchasing ammunition can amount to irreparable harm); *Yue v. Conseco Life Ins. Co.,* 282 F.R.D. 469, 483 (C.D. Cal. 2012) (explaining that the loss of life insurance could cause irreparable harm because the "peace of mind [that policyholders] paid for is irreparably lost—instead, they are left with stress, anxiety, and uncertainty"); *Michaels v. Internet Entm't Grp., Inc.*, 5 F. Supp. 2d 823, 842 (C.D. Cal. 1998) (explaining that the disclosure of a sex tape would cause irreparable harm because it would damage the "human dignity and peace of mind" of those depicted). The district court rejected these intangible harms because it believed that they likely would always accompany financial hardship. But that glosses over Congress' broad intent to protect shipowners from the "threats" of every kind. *See, e.g.*, *In re Blessey Enterprises, Inc.*, No. CIV.A. 08-235-JJB, 2012 WL 1565347, at *3 (M.D. La. Apr. 30, 2012) ("[F]ederal courts must deny any motion which threatens the shipowners.").

*Third*, the Martzes' right to relief on appeal could be irreparably harmed. If the action in Anchorage Superior Court moves quickly, then it could reach a verdict before the Ninth Circuit resolves an appeal. Any verdict exceeding the vessel's value would deprive the Martzes of the very benefit that they seek to vindicate on appeal—potentially rendering the appeal moot. (Trial in the state court is set for February 2022.) Paying a judgment in a *federal* proceeding does not moot an appeal from that proceeding, but paying a *state* judgment that would be otherwise limited

by the appealed-from federal proceeding might. Potential mootness presents irreparable harm. *See John Doe Agency v. John Doe Corp.,* 488 U.S. 1306, 1309 (1989) ("The fact that disclosure would moot that part of the Court of Appeals' decision requiring disclosure of the Vaughn index would also create an irreparable injury."); *accord Artukovic v. Rison,* 784 F.2d 1354, 1356 (9th Cir. 1986) ("The possibility of irreparable injury to Artukovic if we deny his motion is evident: his appeal will become moot.").

These harms would justify an injunction.

**D.     An injunction would serve the public interest.**

An injunction would advance the public interest. "Whereas the balance of equities focuses on the parties, the public interest inquiry primarily addresses impact on non-parties rather than parties[.]" *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 1004 (9th Cir. 2019) (internal quotation marks and alterations omitted). The public has an interest in seeing a statute's objectives served. "[T]he purpose of the Act, i.e., limitation of the owner's liability, might be frustrated" if the Court permits the Claimants to push forward with their suit (and impose substantial costs or liability on the Martzes) only for the Court to later say that Claimants should have been limited to the vessel's value. *See Lake Tankers Corp. v. Henn*, 354 U.S. 147, 151–52 (1957). And "[i]f claimants are permitted to proceed with their state court action prior to the limitation proceeding, there is a possibility that the state litigation

will have some preclusive effect on issues in the limitation proceeding" if this Court should conclude that the limitation proceeding can move forward. *Paradise Holding*, 795 F.2d at 762. Ultimately, an injunction also provides the best hope for the Act to have maximum effect. "Being passed in the public interest and as a matter of public policy, [the Limitation of Liability Act] is to be given a liberality of construction sufficient to give the full benefit of the immunities intended to be secured to the shipowners." *Petition of S. S S Co*, 132 F. Supp. 316, 319 (D. Del. 1955).

This last factor, then, like every factor before it, favors an injunction pending appeal.

* * * *

Because all four factors support an injunction, the Court should reinstate the injunction against any other claims under Federal Rule of Civil Procedure 62(d).

## CONCLUSION

For all these reasons, the Court should grant the Martzes' motion. It should enjoin the further prosecution of any claim, action, or proceeding against the Limitation Plaintiffs or the Limitation Plaintiffs' property as to any claim subject to limitation, including *Horazdovsky v. Martz, et al.*, Case No. 3AN-20-06488CI, filed in the Anchorage Superior Court, until this Court enters a final decision resolving the appeal and the district court completes any later proceedings.

21

Dated: December 21, 2020          Respectfully submitted,

 /s/ Michael R. Williams
Michael R. Williams
BUSH SEYFERTH PLLC
151 S. Rose St., Suite 707
Kalamazoo, MI 49007
(269) 820-4100
williams@bsplaw.com

 /s/ Jonathon A. Katcher
Jonathon A. Katcher
POPE & KATCHER
421 West First Avenue, Suite 220
Anchorage, AK 99501
(907) 272-8577
jkatcher@alaska.net

*Attorneys for Plaintiffs—Appellants William and Jane Martz*

**CERTIFICATE OF COMPLIANCE**

I certify that the forgoing Motion complies with the type-volume limitations of Fed. R. App. P. 27(d)(2) and Circuit Rules 27-1 and 32-3 because (a) it contains 5,199 words and (b) the word count divided by 280 does not exceed the designated page limit of 20 pages.

This Motion complies with the typeface and type style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5)-(6) because it has been prepared in proportionally spaced typeface using Microsoft Office Word 365 in 14-point Times New Roman font.

 /s/ Michael R. Williams
Michael R. Williams

**CERTIFICATE OF SERVICE**

I certify that, on December 21, 2020, I served the foregoing document through the Court's CM/ECF system, which will send notification to all parties of record registered with CM/ECF. On the same date, I also served this document by U.S. Mail to:

Yale H. Metzger
Law Offices of Yale H. Metzger
101 East 9th Avenue, Suite 7A
Anchorage, AK 99501

   /s/ Michael R. Williams
Michael R. Williams

# Exhibit A

Jonathon A. Katcher
POPE & KATCHER
421 West First Avenue, Suite 220
Anchorage, AK 99501
907-272-8577 (phone)
907-274-8040 (fax)
jakatcherak@gmail.com
salto@alaska.net
Attorneys for Plaintiffs

pending admission *pro hac vice*:
Cheryl A. Bush,
BUSH SEYFERTH PLLC
100 W. Big Beaver Rd., Ste. 400
Troy, MI 48084
248-822-7800 (phone)
248-822-7000 (fax)
bush@bsplaw.com
Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF ALASKA**

| | |
|---|---|
| In the Matter of the COMPLAINT of William Martz and Jane Martz, as owners of a Nautique vessel, for Limitation of Liability | Case No. 3:20 CV-00152-SLG<br><br>Hon. Sharon L. Gleason<br><br>Mag. Judge |

**COMPLAINT FOR LIMITATION OF LIABILITY**
(43 U.S.C.A. § 30511 and Fed. R. Civ. P., Supplemental Rule F)

COMPLAINT FOR LIMITATION OF LIABILITY
In the Matter of Martz, Case No. _____

Page 1 of 7

Law Offices of
POPE & KATCHER
421 West First Avenue, Suite 220
Anchorage, Alaska 99501
Tel: (907) 272-8577
Fax: (907) 274-8040

## COMPLAINT FOR LIMITATION OF LIABILITY

Plaintiffs William Martz and Jane Martz bring this action for limitation of liability. In support of this action they state as follows:

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.  Jurisdiction is pursuant to the admiralty and maritime jurisdiction of the United States District Courts, 28 U.S.C.A § 1333.

2.     Plaintiffs William Martz and Jane Martz (collectively "Plaintiffs" or the "Owners") are individuals, husband and wife, and residents of the State of Alaska.

3.     Plaintiffs are the owners of a recreational vessel, a 21-foot 1998 Correct Craft Air Nautique (the "Nautique").  Plaintiffs' ownership is free and clear of any liens or encumbrances.

4.     At all times pertinent hereto the Nautique was present within the State of Alaska, and is so at the present time.  Upon information and belief, following a fatal collision as hereinafter set forth, the Nautique was placed in an Alaska State Trooper impound, and remains there today.

5.     Venue is proper in the United States District Court for the District of Alaska pursuant to Rule F(9) of the Supplemental Rules of Certain Admiralty and Maritime claims.

Case 3:20-cv-00152-SLG   Document 1   Filed 06/25/20   Page 2 of 7

Law Offices of
POPE & KATCHER
421 West First Avenue, Suite 220
Anchorage, Alaska 99501
Tel: (907) 272-8577
Fax: (907) 274-8040

6. The Coast Guard has designated Big Lake as "navigable waters under the United States" as defined in 33 CFR § 2.36(a)(1) subject to the Jurisdiction of the United States.

7. On or about June 9, 2018 the Nautique was being operated on Flat Lake, Alaska. Flat Lake is connected to Big Lake, and is a navigable water of the United States.

8. At said place and time the Nautique was being operated by Reagan Martz, Plaintiffs' adult son. Reagan was not and never has been an owner of the vessel. The Owners were not in privity with Reagan.

9. The Owners were not present at that place and time, and had no knowledge of the events as they occurred at that time.

10. Upon information and belief, at said place and time the Nautique's voyage terminated when it collided with an inflatable raft being towed by another vessel being operated by Andrew Horazdovsky. Jennifer Horazdovsky received fatal injuries in this collision (the "Collision").

11. The following claims (the "Claims") have been brought against the Owners as a result of the Collision:

a. Andrew Horazdovsky, Jennifer's spouse, has brought suit for his alleged injuries.

Law Offices of
POPE & KATCHER
421 West First Avenue, Suite 220
Anchorage, Alaska 99501
Tel: (907) 272-8577
Fax: (907) 274-8040

b. Andrew Horazdovsky, as personal representative of Jennifer's estate, has brought suit for the estate's alleged injuries.

c. Andrew Horazdovsky, as next friend to minor R.H., has brought suit for the minor's alleged injuries.

The Claims were filed in Alaska Superior Court, Third Judicial District at Anchorage, on or about June 4, 2020. *Horazdovsky v. Martz, et al*, Case number 3AN-20-6488CI. Exhibit 1. Plaintiffs' counsel is Yale Metzger, 101 E. Ninth Ave., Ste 7A, Anchorage, Alaska 99501. The state court Complaint alleges that Flat Lake is a navigable water of the United States and asserts causes of action under Admiralty law of the United States. Exhibit 1, ¶¶ 17 & 18; Counts II, III, IV, V & XIV.

12. The Claims seek damages in excess of $100,000.

13. Upon information and belief, the claimed damages are substantially in excess of the value of the Nautique, which had no cargo, and whose value Plaintiffs believe to be approximately $15,000. The Nautique received only minor damage in the Collision.

14. Without admitting liability, Plaintiffs aver that they are entitled to the benefit of limitation of liability as provided in 46 U.S.C.A § 30501 et seq., the Rules for Certain Admiralty and Maritime Claims contained in the Federal Rules of Civil Procedure, and all laws supplementary and amendatory thereto.

*Law Offices of*
**POPE & KATCHER**
*421 West First Avenue, Suite 220
Anchorage, Alaska 99501
Tel: (907) 272-8577
Fax: (907) 274-8040*

15. Fed. R. Civ. P., Supplemental Rule F(1) requires Plaintiffs to deposit costs in such amount as the Court may fix to carry out the provisions of the statute. Local Admiralty Rule (f)-1 sets those costs as One Thousand Dollars ($1,000.00), unless otherwise ordered by the Court. Upon entry of a Court Order fixing those costs, and directing Plaintiffs to deposit said sum with the clerk of the court, Plaintiffs shall promptly do so.

16. Upon the Court's appointment of a Trustee, Plaintiffs shall deliver to same the title to the Nautique.

WHEREFORE, Plaintiffs respectfully pray that the Court grant them the following relief:

A. Pursuant to Fed. R. Civ. P., Supplemental Rule F(1), appoint a Trustee to take possession of the limitation fund for the benefit of any claimants, and specifically those identified in paragraph 11 of this Complaint, and further ordering Plaintiffs to deliver the Nautique's title to the Trustee and directing the Alaska State Troopers to deliver physical custody of the Nautique to the Trustee;

B. Pursuant to Fed. R. Civ. P., Supplemental Rule F(1) and Local Admiralty Rule (f)-1, enter an Order confirming that the required deposit of costs shall be One Thousand Dollars ($1,000.00), or such additional amount as the Court shall deem necessary, and directing Plaintiffs to deposit said sum with the clerk of the court;

Law Offices of
POPE & KATCHER
421 West First Avenue, Suite 220
Anchorage, Alaska 99501
Tel: (907) 272-8577
Fax: (907) 274-8040

C. Pursuant to Fed. R. Civ. P., Supplemental Rule F(3), rule that, upon Plaintiffs' delivery of the Nautique's title to the Trustee, and deposit of the security and costs described in paragraphs B and C, all claims against the Plaintiffs and the Plaintiffs' property with respect to the matter in question shall cease;

D. Pursuant to Fed. R. Civ. P., Supplemental Rule F(3), enjoin the further prosecution of any action or proceeding against the Plaintiffs or the Plaintiffs' property with respect to any claim subject to limitation in this action, and specifically including the claims identified in paragraph 10 of this Complaint;

E. Pursuant to Fed. R. Civ. P., Supplemental Rule F(4), issue a notice to all persons asserting claims with respect to which the Complaint seeks limitation, admonishing them to file their respective claims with the Clerk of the Court and to serve on the attorneys for the Plaintiffs a copy thereof on or before a date to be named in the notice;

F. Adjudge that Plaintiffs' liability be limited to the value of Plaintiffs' interest in the Nautique, and that its value be divided *pro rata* among the claimants;

G. Enter a final Judgment discharging Plaintiffs from any and all further liability and forever permanently enjoining and prohibiting the filing or prosecution of any claims against Plaintiffs or their property in consequence of or in connection with the matters and happenings referred to in this Complaint; and

Case 3:20-cv-00152-SLG   Document 1   Filed 06/25/20   Page 6 of 7

Law Offices of
POPE & KATCHER
421 West First Avenue, Suite 220
Anchorage, Alaska 99501
Tel: (907) 272-8577
Fax: (907) 274-8040

H.     Grant Plaintiffs such other and further relief as the Court deems equitable and just.

DATED this 24th day of June, 2020, at Anchorage, Alaska.

POPE & KATCHER
Attorneys for Plaintiffs


/s/ Jonathon A. Katcher
Jonathon A. Katcher
Alaska Bar No. 8111104

DATED this 24th day of June, 2020, at Troy, Michigan.


pending admission *Pro Hac Vice*
BUSH SEYFERTH PLLC
Attorneys for Plaintiffs


/s/ Cheryl A. Bush
Cheryl A. Bush
Michigan Bar No. P37031

*Law Offices of*
*POPE & KATCHER*
*421 West First Avenue, Suite 220*
*Anchorage, Alaska 99501*
*Tel: (907) 272-8577*
*Fax: (907) 274-8040*

COMPLAINT FOR LIMITATION OF LIABILITY
In the Matter of Martz, Case No. _____                              Page 7 of 7

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

In the Matter of the COMPLAINT of
William Martz and Jane Martz, as
owners of a Nautique vessel, for
Limitation of Liability

Case No. 3:20-cv-00152-SLG

**EX PARTE ORDER APPOINTING TRUSTEE, ISSUING INJUNCTION, AND
DIRECTING PUBLICATION OF REQUIRED NOTICE**

On June 25, 2020, William Martz and Jane Martz ("Limitation Plaintiffs") filed

a Complaint for Limitation of Liability under the terms of the Shipowners' Limitation

of Liability Act, 46 U.S.C. § 30501, *et seq.*[1]  In the Complaint, Limitation Plaintiffs

seek to limit their liability with respect to any and all claims arising from a June 9,

2018 collision between a vessel they own—the Nautique—and "an inflatable raft

being towed by another vessel" on Flat Lake, Alaska.[2]  According to the Complaint,

Jennifer Horazdovsky, who was on the inflatable raft, "received fatal injuries in this

collision."[3]  Her husband, Andrew Horazdovsky, was operating the vessel that was

towing the inflatable raft.[4]  The Complaint states that the Nautique was being

---

[1] Docket 1.

[2] Docket 1 at 2–3, ¶¶ 3, 7, 10.  The Complaint states that Big Lake, to which Flat Lake connects, has been designated "navigable waters under the United States."  Docket 1 at 3, ¶ 6 (quoting 33 C.F.R. § 2.36(a)(1).

[3] Docket 1 at 3, ¶ 10.

[4] Docket 1 at 3, ¶¶ 10–11.

operated by Limitation Plaintiffs' son, Reagan Martz, at the time of the collision, and that Limitation Plaintiffs were not present and "had no knowledge of the events as they occurred at that time."[5]  On June 4, 2020, Mr. Horazdovsky sued Limitation Plaintiffs, Reagan Martz, and three other defendants in the Superior Court for the State of Alaska in the Third Judicial District at Anchorage, asserting several claims arising under state tort law and the federal maritime and admiralty laws.[6]  Limitation Plaintiffs report that Mr. Horazdovsky is seeking damages in excess of $100,000 and that they believe the value of the Nautique "to be approximately $15,000."[7]

Presently before the Court are Limitation Plaintiffs' motions to transfer their ownership interest in the Nautique to a court-appointed trustee,[8] to fix costs,[9] and to enjoin all claims and proceedings against them related to the June 9, 2018 collision,[10] pursuant to 46 U.S.C. § 30511.

## LEGAL FRAMEWORK

The Shipowners' Limitation of Liability Act provides that "the liability of the

---

[5] Docket 1 at 3, ¶ 8–9.

[6] Docket 1 at 3–4, ¶ 11; *see also* Docket 1-1 (Horazdovsky Complaint).  The action in state court is *Horazdovsky v. Martz, et al.*, Case No. 3AN-20-06488CI.  Mr. Horazdovsky brought the action in his personal capacity, as personal representative of Jennifer Horazdovsky's estate, and on behalf of his minor child.  *See* Docket 1-1 at 1.

[7] Docket 1 at 4, ¶¶ 12–13; *see also* Docket 1-1 at 13–14.

[8] Docket 8.

[9] Docket 6.

[10] Docket 4.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martz*
Order re Ex Parte Order Appointing Trustee, Issuing Injunction, and Directing Publication of Required Notice
Page 2 of 7

owner a vessel for any claim, debt, or liability [subject to the Act] . . . shall not exceed the value of the vessel and pending freight."[11]  Claims arising from "injury by collision" are subject to the Act, provided the conduct at issue occurred "without the privity or knowledge of the owner."[12]  To take advantage of this provision, a shipowner must, within six months of receiving notice of a claim, initiate an action in federal court and either deposit with the court an amount equal to his or her interest in the vessel or transfer such interest to a court-appointed trustee.[13]

"Once a shipowner has complied with [these] preliminary procedural requirements, the federal district court must enjoin all other actions which relate to the subject of the limitation proceeding and require all persons who have claims arising out of the same accident to assert them in the district court."[14]  This injunction is a procedural step and does not amount to an affirmative finding that

---

[11] 46 U.S.C. § 30505(a).  Limitation Plaintiffs state that the Nautique carried no freight on June 9, 2018.  Docket 1 at 4, ¶ 13.

[12] 46 U.S.C. § 30505(b); *see also In re Complaint of Ross Island Sand & Gravel*, 226 F.3d 1015, 1017 (9th Cir. 2000) ("A limitation of liability action is a proceeding in admiralty for vessel owners that permits them to limit their liability (if any) to their interest in the vessel and its freight, provided that the loss was incurred without their privity or knowledge.").

[13] 46 U.S.C. § 30511(a)–(b).  The vessel owner must also deposit with the court or transfer to the trustee "an amount, or approved security, that the court may fix from time to time as necessary to carry out this chapter."  *Id.*  Local Admiralty Rule (f)-1 sets the default for this amount at $1,000.

[14] *In re Complaint of Moog*, Case No. 3:19-cv-00030-DCN, 2019 WL 3849152, at *3 (D. Idaho Aug. 14, 2019); *see also* 46 U.S.C. § 30511(c) ("When an action has been brought under this section . . . all claims and proceedings against the owner related to the matter in question shall cease."); Fed. R. Civ. P. Supp. R. F(3) ("On application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff's property with respect to any claim subject to limitation in the action").

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martz*
Order re Ex Parte Order Appointing Trustee, Issuing Injunction, and Directing Publication of Required Notice
Page 3 of 7

the shipowner is entitled to protection under the Act; instead, it ensures that the question is decided in the proper forum.[15]  Once an action to limit liability has been brought in federal court, a claimant may file an answer to contest the shipowner's "right to exoneration from or the right to limitation of liability."[16]  When this is the case, the district court "determines, in a proceeding known as a *concursus*, issues such as liability, the privity and knowledge of the shipowner, and if necessary, the distribution of the limitation fund."[17]

## DISCUSSION

The Court finds that Limitation Plaintiffs have complied with the procedural requirements necessary to initiate an action to limit liability pursuant to 46 U.S.C. § 30511.  The Complaint sets forth the facts upon which Limitation Plaintiffs assert the right to limit liability; it describes the incident from which their potential liability arises and identifies a claim pending against them in state court; it states the estimated value of the Nautique and that Limitation Plaintiffs' ownership of that vessel is "free and clear of any liens or encumbrances"; and it requests that the

---

[15] *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 442 (2001) (noting that "federal courts have exclusive jurisdiction to determine whether a vessel owner is entitled to limited liability"); *see also id.* at 453 ("[T]his Court long ago determined that vessel owners may contest liability in the process of seeking limited liability." (citing *The Benefactor v. Mount*, 103 U.S. 239, 244 (1880)); *cf. In re Complaint of Moog*, 2019 WL 3849152, at *3 n. 5 ("There is a distinction between the shipowner's *right to limit* liability and his *right to seek limitation* of liability." (emphasis in original)).

[16] Fed. R. Civ. P. Supp. F(5).

[17] *In re Complaint of Aloha Jetski, LLC*, 920 F. Supp. 2d 1143, 1146 (D. Hawai'i 2013) (quoting *In re Complaint of S.F. Bar Pilots*, No. c05–02975 MJJ, 2006 WL 16879, at *1 (N.D. Cal. Jan. 3, 2006)).

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martz*
Order re Ex Parte Order Appointing Trustee, Issuing Injunction, and Directing Publication of Required Notice
Page 4 of 7

Court transfer Limitation Plaintiff's ownership interest in the Nautique to a trustee.[18] Upon transfer of that interest to a court-appointed trustee, the Court is therefore required to notice potential and actual claimants against Limitation Plaintiffs and to enjoin all ongoing and future proceedings against them arising out of the June 9, 2018 collision.[19]

## CONCLUSION

In light of the foregoing, Limitation Plaintiffs William Martz and Jane Martz's motions at Dockets 4, 6, and 8 are each GRANTED. Pursuant to 46 U.S.C. § 30511, Supplemental Rule of Federal Civil Procedure F, and Local Admiralty Rule (f)-1, it is hereby ORDERED that:

1. Costs in this matter are set in the amount of One Thousand Dollars ($1,000), and Limitation Plaintiffs shall deposit said sum with the trustee appointed by the Court in this matter.

2. The Court hereby appoints Jacob A. Sonneborn serve as Trustee in this matter to hold, for the benefit of claimants, title to the vessel Nautique and the $1,000 costs deposit.

3. Limitation Plaintiffs shall deliver the Nautique's title to the Trustee.[20]

---

[18] *Compare* Docket 1, *with* Fed. R. Civ. P. Supp. R. F(1).

[19] 46 U.S.C. § 30511(c) requires only that "proceedings against the owner . . . shall cease." Nothing in this order shall be taken to enjoin or otherwise affect Mr. Horazdovsky's claims against Reagan Martz, Darren Barce, Betty Barce, and Douglas Barce. *See* Docket 1-1 at 2–3, ¶¶ 6–11 (naming defendants).

[20] The Court denies without prejudice Plaintiffs' request for an order directing the Alaska State

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martz*
Order re Ex Parte Order Appointing Trustee, Issuing Injunction, and Directing Publication of Required Notice
Page 5 of 7
Case 3:20-cv-00152-SLG   Document 17   Filed 06/30/20   Page 5 of 7

4. Upon Limitation Plaintiffs' delivery to the Trustee of the title to the vessel at issue in this litigation (the Nautique), together with costs in the amount of $1,000, all claims against Limitation Plaintiffs and their property shall CEASE and the Court thereupon ENJOINS the further prosecution of any claim, action, or proceeding against the Limitation Plaintiffs or the Limitation Plaintiffs' property, with respect to any claim subject to limitation in this action, such actions including, but not limited to *Horazdovsky v. Martz, et al.*, Case No. 3AN-20-06488CI, filed in the Anchorage Superior Court.[21]

5. This order serves as notice to all persons that may claim damage sustained or occasioned or incurred by or resulting from the June 9, 2018 collision of the Nautique on Flat Lake, Alaska, as described in Limitation Plaintiffs' June 25, 2020 Complaint, or in any way arising out of or in connection with the operation of the Nautique at or near the time when the collision occurred, and admonishes them to file their respective claims with the Clerk of Court for the District of Alaska and to serve on or mail to counsel for Limitation Plaintiffs a copy thereof, or be defaulted, on or before August 31, 2020. Each claim must specify the facts upon which

---

Trooper to surrender physical custody of the vessel to the trustee.

[21] This order does not enjoin or otherwise affect Mr. Horazdovsky's pending state court claims against Reagan Martz, Darren Barce, Betty Barce, and Douglas Barce. See Docket 1-1 at 2-3, ¶¶ 6-11 (naming defendants).

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martz*
Order re Ex Parte Order Appointing Trustee, Issuing Injunction, and Directing Publication of Required Notice
Page 6 of 7
Case 3:20-cv-00152-SLG   Document 17   Filed 06/30/20   Page 6 of 7

the claimant relies in support of the claim, the items thereof, and the dates on which the same accrued. If a claimant seeks to contest Limitation Plaintiffs' right to limitation of liability, the claimant must file and serve an answer to Limitation Plaintiffs' June 25, 2020 Complaint.

6. The notice specified immediately above shall be published with pertinent details by Limitation Plaintiffs in the Mat-Su Valley Frontiersman once per week for four consecutive weeks prior to August 31, 2020. Limitation Plaintiffs shall, not later than the date of the second publication, mail a copy of said notice to every person known to have made or who may make a claim against either or both of the Limitation Plaintiffs and/or the Nautique arising out of the incident for which the claims sought to be limited arose.

7. Within 30 days after August 31, 2020, Limitation Plaintiffs shall mail to the attorney for each claimant (or if the claimant has no attorney to the claimant) a list setting forth (a) the name of each claimant, (b) the name and address of the claimant's attorney (if the claimant is known to have one), (c) the nature of the claim, i.e., whether property loss, property damage, death, personal injury, etc., and (d) the amount thereof.

DATED this 30th day of June, 2020 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martz*
Order re Ex Parte Order Appointing Trustee, Issuing Injunction, and Directing Publication of Required Notice
Page 7 of 7
Case 3:20-cv-00152-SLG   Document 17   Filed 06/30/20   Page 7 of 7

# Exhibit C

Jonathon A. Katcher
POPE & KATCHER
421 West First Avenue, Suite 220
Anchorage, AK 99501
907-272-8577 (phone)
907-274-8040 (fax)
jakatcherak@gmail.com
salto@alaska.net
Attorneys for Plaintiffs

Cheryl A. Bush,
BUSH SEYFERTH PLLC
100 W. Big Beaver Rd., Ste. 400
Troy, MI 48084
248-822-7800 (phone)
248-822-7000 (fax)
bush@bsplaw.com
Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA**

| | |
|---|---|
| In the Matter of the COMPLAINT of William Martz and Jane Martz, as owners of a Nautique vessel, for Limitation of Liability | Case No. 3:20-cv-00152-SLG |

*Law Offices of*
*POPE & KATCHER*
*421 West First Avenue, Suite 220*
*Anchorage, Alaska 99501*
*Tel: (907) 272-8577*
*Fax: (907) 274-8040*

## AFFIDAVIT OF JONATHON A. KATCHER

**AFFIDAVIT OF JONATHON A. KATCHER**
***In the Matter of Martz***, **Case No. 3:20-cv-00152-SLG**      **Page 1 of 8**

Case 3:20-cv-00152-SLG    Document 25-4    Filed 07/23/20    Page 2 of 31    Ex. C

## AFFIDAVIT OF JONATHON A. KATCHER

STATE OF ALASKA ... )
... ) ss:
THIRD JUDICIAL DISTRICT )

Jonathon A. Katcher, being first duly sworn, deposes and states as follows:

1. I am one of the attorneys representing William Martz and Jane Martz in the above captioned case.

2. The purpose of this affidavit is to address the issue of when I, on behalf of my clients William Martz and Jane Martz, first received written notice of a claim against them related to a June 9, 2018, boating accident ("the accident"). The accident involved the Martz' son Reagan Martz, who at the time of the accident was operating a Nautique vessel owned by the Martz parents. As will be detailed below, the first time that I received written notice of a claim against William Martz or Jane Martz related to the accident was after June 4, 2020, when I was provided with a copy of the complaint that the Horazdovsky plaintiffs had filed in Alaska Superior Court. *Horazdovsky v. Martz, et al.*, 3AN-20-6488CI. Prior to my receiving a copy of the state court complaint, I had served as attorney for William, Jane and Reagan Martz on insurance matters. During that time, any and all written communications between me and the Horazdovskys' attorneys were solely for purposes of responding to their inquiries regarding insurance, and to disclose to those attorneys the fact that none of the Martzs had any liability insurance that might cover any of them or their vessel for the accident.

*Law Offices of*
**POPE & KATCHER**
*421 West First Avenue, Suite 220*
*Anchorage, Alaska 99501*
*Tel: (907) 272-8577*
*Fax: (907) 274-8040*

None of those pre-state court lawsuit communications ever provided written notice to me of any claim against William Martz or Jane Martz related to the accident.

3. During June of 2018, the Martzs provided me with a copy of a June 13, 2018, letter, from attorney Timothy J. Lamb addressed to Reagan Martz. Exhibit C-1. Mr. Lamb stated that he "was searching for any insurance coverage that might be available to compensate" the Horazdovskys. Mr. Lamb asked Reagan to provide the name and contact information for the owner of the boat, and the name and contact information for the boat's insurer. I subsequently called Mr. Lamb's office and left him a voice mail message to the effect that Reagan Martz and the boat did not have any liability insurance coverage for the accident.

4. I did not then and do not now consider Mr. Lamb's letter to have been written notice of a claim against William Martz or Jane Martz for damages or compensation related to the accident. Rather, I then considered and continue to consider Mr. Lamb's letter to have been merely an inquiry regarding insurance coverage for Reagan Martz and the boat, and nothing more.

5. On October 23, 2018, at 2:14 pm, attorney Carl Cook sent me an email. Exhibit C-2. Mr. Cook stated: "[P]lease accept this email as my request for the statement of coverage for the insurance policies on the boat Mr. Martz was driving and the property he was staying at that day." On October 23 at 4:09 pm, I responded: "There was no coverage on the boat Reagan Martz was driving." *Id.* In that same email I provided Mr. Cook with copies of Reagan Martz' insurance policies, as well as my

Law Offices of
**POPE & KATCHER**
421 West First Avenue, Suite 220
Anchorage, Alaska 99501
Tel: (907) 272-8577
Fax: (907) 274-8040

**AFFIDAVIT OF JONATHON A. KATCHER**
*In the Matter of Martz*, **Case No. 3:20-cv-00152-SLG** **Page 3 of 8**

analysis that none of the policies covered Reagan Martz or the boat for the accident. On October 24, 2018, at 9:13 am, Mr. Cook sent me another email asking additional questions about insurance and Reagan's residences. Exhibit C-3. On October 24, 2018, at 11:11 am, Mr. Cook sent me another email, asking "who is the owner on the title for the boat that Reagan Martz was driving?" Exhibit C-4.

6. I did not then and do not now consider Mr. Cook's October 23 and 24, 2018, emails to have been written notices of a claim against William Martz or Jane Martz for damages or compensation related to the accident. Rather, I then considered, and continue to consider, Mr. Cook's emails to have been merely inquiries regarding insurance coverage for Reagan Martz and the boat.

7. On November 8, 2018, Mr. Cook faxed me the letter attached as Exhibit C-5. Mr. Cook identified his letter as "Re: Horazdovsky v. Martz." Mr. Cook stated: "When we spoke on October 23, 2018, you asked that I send you an email with any requests that I might have regarding coverage for the incident." Mr. Cook noted that I had "responded [on October 23] with policy information regarding . . . coverage." Mr. Cook reiterated his request in his October 24 at 9:13am email (Exhibit C-3) for information about insurance and Reagan's residences. On November 20, 2018, I responded to Mr. Cook. Exhibit C-6. Adopting Mr. Cook's identifier (*see* Exhibit C-5), I identified my letter as "Re: Horazdovsky v. Martz," and answered his questions regarding insurance and Reagan's residences.

*Law Offices of*
**POPE & KATCHER**
421 West First Avenue, Suite 220
Anchorage, Alaska 99501
Tel: (907) 272-8577
Fax: (907) 274-8040

**AFFIDAVIT OF JONATHON A. KATCHER**
*In the Matter of Martz*, **Case No. 3:20-cv-00152-SLG**                    **Page 4 of 8**

8. I did not then, and do not now, consider Mr. Cook's November 8, 2018, letter to have been written notice of a claim against William Martz or Jane Martz for damages or compensation related to the accident. Rather, I then considered, and continue to consider, Mr. Cook's letter to have been merely inquiring regarding Reagan Martz' residences, and insurance coverage for Reagan and the boat. By using the identifier "Re: Horazdovsky v. Martz" in my response (Exhibit C-6), I was merely echoing Mr. Cook's identifier. I was not indicating or stating that Mr. Cook or anybody else had made any claim, written or otherwise, against William Martz or Jane Martz.

9. On December 4, 2018, attorney Robert Stone faxed me the letter attached as Exhibit C-7. Mr. Stone identified his letter as "RE: Horazdovsky v. Reagan Martz, William and Jane Martz, and Betty Barce; Date of Collision: June 9, 2018." Mr. Stone stated:

> I write to seek clarification regarding a number of insurance coverage issues.
>
> * * *
>
> You can appreciate our interest in investigating what potential coverages exist to pay for the damages caused. Our investigation is not complete. We are not yet certain whether Betty Barce bears some responsibility. We are also not yet certain whether William Martz or Jane Martz bear any responsibility.
>
> * * *
>
> I would like to avoid unnecessarily naming parties to a lawsuit.

Mr. Stone then asked a number of questions related to insurance coverage. Mr. Stone then stated:

*Law Offices of*
**POPE & KATCHER**
*421 West First Avenue, Suite 220*
*Anchorage, Alaska 99501*
*Tel: (907) 272-8577*
*Fax: (907) 274-8040*

While I realize that some of these policies may not specifically name Reagan Martz, I would (sic) you to construe each policy broadly to provide coverage to Reagan Martz, even if there is an arguable coverage issue.

If there has been a tender of coverage to any insurance companies, please advise. I am interested in receiving a copy of any denial of coverage, acceptance of coverage, and/or any reservation of rights issued by any insurer to either Betty Barce, William or Jane Martz, or Reagan Martz, regarding this June 9, 2018, collision.

10. On December 5, 2018, I wrote back to Mr. Stone. Exhibit C-8. Again using Mr. Cook's identifier (*see* Exhibits C-5 and C-6), I identified my letter to Mr. Stone as "Re: Horazdovsky v. Martz." I answered Mr. Stone's questions regarding insurance and provided him with copies of the Martz parents' insurance policies. I closed with:

In light of the absence of any colorable assertion of coverage for this accident under any insurance policies that might apply to Reagan, William or Jane Martz, we have not tendered this claim to any insurance companies.

11. I did not then and do not now consider Mr. Stone's December 4, 2018, letter to have been written notice of a claim against William Martz or Jane Martz for damages or compensation related to the accident. Rather, I then considered, and continue to consider, Mr. Stone's letter to have been but another attorney inquiry regarding insurance coverage. By using the identifier "Re: Horazdovsky v. Martz" in my December 5 letter (Exhibit C-8), I was again merely echoing Mr. Cook's identifier. *See* Exhibits C-5 and C-6. I was not indicating or stating that Mr. Stone or anybody else had made any claim, written or otherwise, against William Martz or Jane Martz. When I stated "we have not tendered this claim to any insurance companies," I was merely stating that we had not tendered a claim for insurance coverage to any insurance

*Law Offices of*
*POPE & KATCHER*
*421 West First Avenue, Suite 220*
*Anchorage, Alaska 99501*
*Tel: (907) 272-8577*
*Fax: (907) 274-8040*

company. I was not stating that the Horazdovskys had provided written notice of a claim to William Martz or Jane Martz, or to me on behalf of William Martz or Jane Martz.

12. After December 5, 2018, I spoke telephonically with Mr. Stone. I recall Mr. Stone saying that it was not his practice to sue people who were not insured. I took this to mean that, because none of the Martzs were insured for the accident, Mr. Stone had not provided, and would not be providing, me with written notice of a claim, and would not be filing a written claim or a lawsuit, against William Martz or Jane Martz.

13. My strategy, purpose, intent and goal in all of my communications with Mr. Lamb, Mr. Cook, and Mr. Stone was to educate them about the fact that none of the Martzs had insurance for the accident, and thereby to deter the attorneys from making any kind of claim against any of the Martzs, written or otherwise. My strategy was successful in that neither Mr. Lamb, nor Mr. Cook, nor Mr. Stone, ever provided me with any notice, much less written notice, of a claim against any of the Martzs.

14. On May 14, 2020, I received a phone call from attorney Yale Metzger. Mr. Metzger stated that he represents the Horazdovsky family. Mr. Metzger stated his position that the six-month statute of limitations for William Martz and Jane Martz to file an admiralty limitation of liability action had run. Mr. Metzger's statement was the first mention that anyone had ever made to me to the effect that William Martz or Jane Martz or I had been previously provided with written notice of a claim related to the accident.

*Law Offices of*
**POPE & KATCHER**
*421 West First Avenue, Suite 220*
*Anchorage, Alaska 99501*
*Tel: (907) 272-8577*
*Fax: (907) 274-8040*

**AFFIDAVIT OF JONATHON A. KATCHER**
*In the Matter of Martz,* **Case No. 3:20-cv-00152-SLG**                **Page 7 of 8**

15. Notwithstanding Mr. Metzger's statement, and his position in his motion for summary judgment (Docket 19), none of my communications with any of the counsel representing the Horazdovskys (Mr. Lamb; Mr. Cook; Mr. Stone), provided me with written notice that any of them were asserting a claim against William Martz or Jane Martz. All of these communications pertained to insurance coverage and nothing more.

DATED this 15th day of July, 2020, at Anchorage, Alaska.

Jonathon A. Katcher
Alaska Bar No. 8111104

SUBSCRIBED AND SWORN to before me this 15th day of July, 2020.

Notary Public for Alaska
My Commission Expires: 9-15-23

*Law Offices of*
***POPE & KATCHER***
*421 West First Avenue, Suite 220*
*Anchorage, Alaska 99501*
*Tel: (907) 272-8577*
*Fax: (907) 274-8040*

**AFFIDAVIT OF JONATHON A. KATCHER**
*In the Matter of Martz*, **Case No. 3:20-cv-00152-SLG**            **Page 8 of 8**

# Exhibit C-1



# Exhibit C-2

**Jonathon Katcher**

| | |
|---|---|
| From: | Jonathon Katcher <jkatcher@alaska.net> |
| Sent: | Tuesday, October 23, 2018 4:09 PM |
| To: | 'Carl Cook' |
| Subject: | RE: Martz Accident |
| Attachments: | Reagan Auto Declarations Premium Redacted.PDF; Reagan Snowmobile Declarations Premium Redacted.PDF; Reagan Auto Policy.pdf; Reagan motorcycle form Z830.pdf; Reagan Motorcycle Policy.pdf |

Mr. Cook,

There was no insurance coverage on the boat Reagan Martz was driving.

Attached are copies of the Progressive policies and declarations for Mr. Martz's automobile and snowmobile. I have redacted the premium information. Progressive's snowmobile policy forms are the same as Progressive's motorcycle forms. Mr. Martz does not own or insure a motorcycle.

Neither policy covers a boat. The auto policy at page 1 paragraph 2 defines an auto to be a land motor vehicle designed for operation principally on public roads with at least four wheels. The snowmobile/motorcycle policy form at page 1 paragraph 5 defines a motorcycle as a motorcycle that is designed for operation principally upon public roads and has at least two wheels. While one might argue about whether a snowmobile fits within this definition, a boat certainly does not fit within this definition.

The cabin was owned by a Darren Barce or his family. I do not represent Mr. Barce or his family. I have no information as to their insurance situation.

*Jonathon Katcher*

421 West First Avenue, Suite 220
Anchorage AK 99501
Tel 907-272-8577
Fax 907-274-8040
Email: jkatcher@alaska.net

Confidentiality Note: This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please advise the sender by reply e-mail to jkatcher@alaska.net, and destroy the original message and all copies.

**From:** Carl Cook [mailto:carl@alaskaresolutions.com]
**Sent:** Tuesday, October 23, 2018 2:14 PM
**To:** jkatcher@alaska.net
**Subject:** Martz Accident

Mr. Katcher,
My name is Carl Cook. I am an attorney in Anchorage and represent Andrew Horazdovsky, whose wife Jennifer was killed in the June 9, 2018 accident on Flat Lake. Per our discussions, please accept this email as my request for the statement of coverage for the insurance policies on the boat Mr. Martz was driving and the property he was staying at that day.

Ex. C- 2 - Page 1 of 2

1

Case 3:20-cv-00152-SLG   Document 25-4   Filed 07/23/20   Page 13 of 31

Thank you,

Carl D. Cook
Owner
Law Office of Carl D. Cook, P.C.
501 W. Northern Lights Blvd., Ste 203
Anchorage, AK 99503
Phone: 907-929-0888
Fax: 907-929-1878

*This e-mail and any attachments may contain confidential and/or privileged information. This information is intended to be read only by the individual or entity to whom it is addressed. If you are not the intended recipient, you are on notice that any review, disclosure, copying, distribution or use of the contents of this message is strictly prohibited. If you have received this message in error, please notify the sender immediately and delete or destroy any copy of this message.*

Ex. C- 2 - Page 2 of 2

# Exhibit C-3

Case 3:20-cv-00152-SLG   Document 25-4   Filed 07/23/20   Page 15 of 31

**Jonathon Katcher**

| | |
|---|---|
| **From:** | Carl Cook <carl@alaskaresolutions.com> |
| **Sent:** | Wednesday, October 24, 2018 9:13 AM |
| **To:** | Jonathon Katcher |
| **Subject:** | RE: Martz Accident |

Mr. Katcher,

Can you please advise on the following two issues:

1. Did Reagan Martz have a separate residence or did he reside with his parents prior to his arrest?
2. If he had a separate residence, did he own a home?
3. If he had a separate residence and did not own a home, did he have renters insurance?
4. Is Reagan Martzs' criminal attorney being paid by an insurance company? If so, please provide the name and contact information for the insurance company.

Thank you for taking the time to provide information in this matter.

Carl D. Cook
Owner
Law Office of Carl D. Cook, P.C.
501 W. Northern Lights Blvd., Ste 203
Anchorage, AK 99503
Phone: 907-929-0888
Fax: 907-929-1878

*This e-mail and any attachments may contain confidential and/or privileged information. This information is intended to be read only by the individual or entity to whom it is addressed. If you are not the intended recipient, you are on notice that any review, disclosure, copying, distribution or use of the contents of this message is strictly prohibited. If you have received this message in error, please notify the sender immediately and delete or destroy any copy of this message.*

**From:** Jonathon Katcher [mailto:jkatcher@alaska.net]
**Sent:** Tuesday, October 23, 2018 4:09 PM
**To:** Carl Cook
**Subject:** RE: Martz Accident

Mr. Cook,

There was no insurance coverage on the boat Reagan Martz was driving.

Ex. C-3 - Page 1 of 2

1

Attached are copies of the Progressive policies and declarations for Mr. Martz's automobile and snowmobile. I have redacted the premium information. Progressive's snowmobile policy forms are the same as Progressive's motorcycle forms. Mr. Martz does not own or insure a motorcycle.

Neither policy covers a boat. The auto policy at page 1 paragraph 2 defines an auto to be a land motor vehicle designed for operation principally on public roads with at least four wheels. The snowmobile/motorcycle policy form at page 1 paragraph 5 defines a motorcycle as a motorcycle that is designed for operation principally upon public roads and has at least two wheels. While one might argue about whether a snowmobile fits within this definition, a boat certainly does not fit within this definition.

The cabin was owned by a Darren Barce or his family. I do not represent Mr. Barce or his family. I have no information as to their insurance situation.

*Jonathon Katcher*

421 West First Avenue, Suite 220
Anchorage AK 99501
Tel 907-272-8577
Fax 907-274-8040
Email: jkatcher@alaska.net

Confidentiality Note: This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please advise the sender by reply e-mail to jkatcher@alaska.net, and destroy the original message and all copies.

**From:** Carl Cook [mailto:carl@alaskaresolutions.com]
**Sent:** Tuesday, October 23, 2018 2:14 PM
**To:** jkatcher@alaska.net
**Subject:** Martz Accident

Mr. Katcher,
My name is Carl Cook. I am an attorney in Anchorage and represent Andrew Horazdovsky, whose wife Jennifer was killed in the June 9, 2018 accident on Flat Lake. Per our discussions, please accept this email as my request for the statement of coverage for the insurance policies on the boat Mr. Martz was driving and the property he was staying at that day.
Thank you,

Carl D. Cook
Owner
Law Office of Carl D. Cook, P.C.
501 W. Northern Lights Blvd., Ste 203
Anchorage, AK 99503
Phone: 907-929-0888
Fax: 907-929-1878

*This e-mail and any attachments may contain confidential and/or privileged information. This information is intended to be read only by the individual or entity to whom it is addressed. If you are not the intended recipient, you are on notice that any review, disclosure, copying, distribution or use of the contents of this message is strictly prohibited. If you have received this message in error, please notify the sender immediately and delete or destroy any copy of this message.*

EX. C-3 - Page 2 of 2

2

# Exhibit C-4

**Jonathon Katcher**

| | |
|---|---|
| **From:** | Carl Cook <carl@alaskaresolutions.com> |
| **Sent:** | Wednesday, October 24, 2018 11:11 AM |
| **To:** | Jonathon Katcher |
| **Subject:** | RE: Martz Accident |

Mr. Katcher,
I forgot to ask who is the owner on title for the boat that Reagan Martz was driving? Thanks again.
Carl

**From:** Jonathon Katcher [mailto:jkatcher@alaska.net]
**Sent:** Tuesday, October 23, 2018 4:09 PM
**To:** Carl Cook
**Subject:** RE: Martz Accident

Mr. Cook,

There was no insurance coverage on the boat Reagan Martz was driving.

Attached are copies of the Progressive policies and declarations for Mr. Martz's automobile and snowmobile. I have redacted the premium information. Progressive's snowmobile policy forms are the same as Progressive's motorcycle forms. Mr. Martz does not own or insure a motorcycle.

Neither policy covers a boat. The auto policy at page 1 paragraph 2 defines an auto to be a land motor vehicle designed for operation principally on public roads with at least four wheels. The snowmobile/motorcycle policy form at page 1 paragraph 5 defines a motorcycle as a motorcycle that is designed for operation principally upon public roads and has at least two wheels. While one might argue about whether a snowmobile fits within this definition, a boat certainly does not fit within this definition.

The cabin was owned by a Darren Barce or his family. I do not represent Mr. Barce or his family. I have no information as to their insurance situation.

*Jonathon Katcher*

421 West First Avenue, Suite 220
Anchorage AK 99501 ·
Tel 907-272-8577
Fax 907-274-8040
Email: jkatcher@alaska.net

Confidentiality Note: This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please advise the sender by reply e-mail to jkatcher@alaska.net, and destroy the original message and all copies.

**From:** Carl Cook [mailto:carl@alaskaresolutions.com]
**Sent:** Tuesday, October 23, 2018 2:14 PM
**To:** jkatcher@alaska.net
**Subject:** Martz Accident

Ex. C-4 - Page 1 of 2

1

Mr. Katcher,
My name is Carl Cook. I am an attorney in Anchorage and represent Andrew Horazdovsky, whose wife Jennifer was killed in the June 9, 2018 accident on Flat Lake. Per our discussions, please accept this email as my request for the statement of coverage for the insurance policies on the boat Mr. Martz was driving and the property he was staying at that day.
Thank you,

Carl D. Cook
Owner
Law Office of Carl D. Cook, P.C.
501 W. Northern Lights Blvd., Ste 203
Anchorage, AK 99503
Phone: 907-929-0888
Fax: 907-929-1878

*This e-mail and any attachments may contain confidential and/or privileged information. This information is intended to be read only by the individual or entity to whom it is addressed. If you are not the intended recipient, you are on notice that any review, disclosure, copying, distribution or use of the contents of this message is strictly prohibited. If you have received this message in error, please notify the sender immediately and delete or destroy any copy of this message.*

Ex. C-4 - Page 2 of 2

# Exhibit C-5

## *Law Offices of Carl D. Cook, P.C.*

501 West Northern Lights Boulevard, Ste 203
Anchorage, Alaska 99503
(907) 929-0888 (907) 929-1878 (fax)

November 8, 2018

RECEIVED
NOV 8 2018
BY:_____

Mr. Jonathon Katcher
Pope & Katcher
421 West First Avenue, Suite 220
Anchorage AK 99501

Re: Horazdovsky vs. Martz

Dear Mr. Katcher,

On October 24, 2018, I sent your office two emails regarding the above boating incident which claimed the life of my client's wife when she was struck by a boat driven by Reagan Martz. When we spoke on October 23, 2018, you asked that I send you an email with any requests I might have regarding coverage for the incident. I sent an initial request on October 23, 2018 and you responded the same day with policy information regarding Reagan Martz's snowmobile and auto coverage.

On October 24, 2018 I sent two emails requesting the following information:

1. Did Reagan Martz have a separate residence or did he reside with his parents prior to his arrest? (This question has since been answered thru research which which also answered question two)

2. Answered thru research

3. Did Reagan Martz have renters insurance?

4. Is Reagan Martz's criminal attorney, or any civil attorney working on his, or his families behalf, regarding this matter, being paid by an insurance company? If so, please provide the name and contact information for the insurance company.

5. Who was the owner of the boat at the time of the accident?

Please provide the requested information so that I am able to properly advise Mr. Horazdovsky in this matter.

Sincerely,
LAW OFFICES OF CARL D. COOK, P.C.

Carl Cook

Ex. C-5 - Page 1 of 1

# Exhibit C-6

**Law Offices of**
**POPE & KATCHER**
421 West First Avenue, Suite 220
Anchorage, Alaska 99501

**Douglas Pope**
**Jonathon A. Katcher**

Telephone (907) 272-8577
Facsimile (907) 274-8040

November 20, 2018

Carl D. Cook
LAW OFFICES OF CARL D. COOK, P.C.
501 West Northern Lights Blvd., Suite 203
Anchorage, AK 99503

      Re: *Horazdovsky v. Martz*
         Our File No. 5564

Dear Mr. Cook:

In response to the unanswered questions that you pose in your letter of November 8, 2018:

      Question 3.    Reagan Martz did not have renters insurance.

      Question 4.    No insurance company is paying for Reagan Martz's criminal defense attorney, or any civil attorney working on his behalf, or his family's behalf, regarding this matter.

      Question 5.    Reagan's parents William Martz and Jane Martz were the owners of the boat at the time of the accident.

                             Sincerely,

                             Jonathon A. Katcher

Ex. C-6 - Page 1 of 1

# Exhibit C-7

*Law Office Of*

# *Robert D. Stone*

*A Limited Liability Company*

1049 West 5th Avenue, Suite 102
Anchorage, Alaska 99501

*Telephone*
*(907) 276-4190*

*Facsimile*
*(907) 276-4140*

December 4, 2018

Jonathon Katcher, *Esq.*                                          **VIA FACSIMILE**
POPE & KATCHER
421 West 1st Avenue, Suite 220
Anchorage, AK 99501

> RE:  *Horazdovsky v. Reagan Martz, William and Jane Martz, and Betty Barce*
> Date of Collision:    June 9, 2018

Dear Mr. Katcher:

I have had conversations with attorney Carl Cook regarding a boating accident that occurred on or near Flat Lake, on or about June 9, 2018. I write to seek clarification regarding a number of insurance coverage issues.

It is my understanding that Reagan Martz, son of William and Jane Martz, was drinking heavily at a party sponsored by William and Jane Martz. I also understand that Reagan's grandmother, Betty Barce, has an ownership interest in the property. It is also my understanding that Reagan was a permissive user of a boat owned by his parents.

The facts, as conveyed to me, suggest that Reagan Martz was severely intoxicated, and that as a result of such intoxication, he collided with a raft occupied by Jennifer Horazdovsky and two other female occupants. As a result of the collision, Jennifer Horazdovsky died. The other two occupants were seriously injured. I also understand that there were others riding with Reagan Martz in the boat he was operating.

I have been told that Reagan Martz fled the scene, changed from the boat to a jet ski, and continued to flee the scene until he was ultimately apprehended.

It is my understanding that Reagan Martz has been charged with manslaughter, assault, and driving under the influence.

Ex. C-7 - Page 1 of 3

Jonathon Katcher, *Esq.*
December 4, 2018
Page 2

You can appreciate our interest in investigating what potential coverages exist to pay for the damages caused. Our investigation is not complete. We are not yet certain whether Betty Barce bears some responsibility. We are also not yet certain whether William Martz or Jane Martz bear any responsibility.

It is my understanding that you represent the family, collectively. If my understanding is incorrect, please clarify which people you represent.

I would like to avoid unnecessarily naming parties to a lawsuit. Therefore, I would appreciate you providing me with the following insurance information:

1. Please provide me with the ownership information regarding the property at issue on or near Flat Lake;

2. Copies of all policies of insurance covering the property at issue;

3. Copies of all homeowner's policies covering William and Jane Martz;

4. Any and all umbrella policies covering William and Jane Martz;

5. Any and all umbrella policies covering Betty Barce;

6. Copies of all homeowner's or rental policies covering Reagan Martz;

7. Any and all umbrella policies covering Reagan Martz; and,

8. Any watercraft policies in place covering either Betty Barce, William and Jane Martz, or Reagan Martz.

While I recognize that some of these policies may not specifically name Reagan Martz, I would you to construe each policy broadly to provide coverage to Reagan Martz, even if there is an arguable coverage issue.

If there has been a tender of coverage to any insurance companies, please advise. I am interested in receiving a copy of any denial of coverage, acceptance of coverage,

Ex. C-7 - Page 2 of 3

Jonathon Katcher, *Esq.*
December 4, 2018
Page 3

and/or any reservation of rights issued by any insurer to either Betty Barce, William or Jane Martz, or Reagan Martz, regarding this June 9, 2018 collision.

I look forward to working with you and would welcome a call to discuss some of these issues.

Sincerely,

LAW OFFICE OF ROBERT STONE, LLC

By: Robert D. Stone, *Esq.*

cc:     Carl Cook, *Esq.*

Ex. C-7 - Page 3 of 3

# Exhibit C-8

**Law Offices of**
**POPE & KATCHER**
421 West First Avenue, Suite 220
Anchorage, Alaska 99501

**Douglas Pope**
**Jonathon A. Katcher**

Telephone (907) 272-8577
Facsimile (907) 274-8040

December 5, 2018

HAND DELIVERED

Robert D. Stone
LAW OFFICES OF ROBERT D. STONE, LLC
1049 West 5th Ave., Suite 102
Anchorage, AK 99501

    Re:  *Horazdovsky v. Martz*
        Our File No. 5564

Dear Rob:

In response to your letter of December 4, 2018:

Your letter contains a number of assertions. I will specifically address only the following three of your assertions:

The alleged party in question was **not** in any manner sponsored or supported by William and/or Jane Martz.

The cabin is **not** owned by any member of the Martz family. Our information is that the cabin is owned by the family of Darren Barce. See my October 23, 2018 email to Mr. Cook stating the same.

Betty Barce is the **not** grandmother of Reagan Martz. Ms. Barce is not at all related to the Martz family. We assume, but do not know, that Betty Barce is the grandmother of Darren Barce.

My failure to address the remaining assertions in your letter should not be construed as an admission as to any of those assertions.

Ex. C-8 - Page 1 of 2

Robert D. Stone
December 5, 2018
Page 2

I have investigated and confirmed that Reagan Martz had no insurance coverage of any kind for this accident. There is no basis for William and Jane Martz having any liability for this accident. In any event, William and Jane Martz had no insurance coverage that would apply to this accident.

Turning to your insurance questions:

1. Our only information about the ownership of the cabin is that it was owned by the family of Darren Barce.
2. We have no information about insurance for the cabin.
3. Enclosed is a copy of the Safeco homeowners policy for William and Jane Martz. We have redacted the premium information from the declarations pages. As you can see, the policy specifically excludes watercraft. See the policy pp.14-15 ¶1(e)(3). The boat's engine had more than 50 horsepower.
4. William and Jane Martz do not have an umbrella policy.
5. We have no information about insurance for Betty Barce.
6. Reagan Martz did not have a homeowners or rental policy.
7. Reagan Martz did not have an umbrella policy.
8. There were no watercraft policies in place for William, Jane or Reagan Martz. We have no information about watercraft policies for Betty Barce.

In light of the absence of any colorable assertion of coverage for this accident under any insurance policies that might apply to Reagan, William or Jane Martz, we have not tendered this claim to any insurance companies.

Please feel free to call if you have any questions or comments.

Sincerely,

Jonathon A. Katcher

Enclosure

cc: William Martz

# Exhibit D

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

|  |  |
|---|---|
| In the Matter of the COMPLAINT of William Martz and Jane Martz, as owners of a Nautique vessel, for Limitation of Liability | Case No. 3:20-cv-00152-SLG |

## ORDER RE MOTIONS FOR SUMMARY JUDGMENT

Before the Court at Docket 19 is Claimant Andrew Horazdovsky's Motion for (1) Summary Judgment Dismissing Complaint, (2) Vacating the Court's June 30, 2020 Injunction, and (3) an Award of Reasonable Attorney Fees Incurred in Responding to the Complaint.[1] Limitation Plaintiffs William Martz and Jane Martz responded in Opposition at Docket 23. Claimant replied at Docket 27. Also before the Court is Limitation Plaintiffs' Cross Motion for Summary Judgment at Docket 24. Claimant responded in opposition at Docket 32. Limitation Plaintiffs replied at Docket 35. The Court heard argument on the motions on September 3, 2020.

---

[1] The Court denied the portion of Claimant's motion seeking attorney's fees at the conclusion of oral argument. *See* Docket 37.

# BACKGROUND

## A.    Procedural History

On June 25, 2020, Limitation Plaintiffs commenced this action for limitation of liability.[2]  They seek to enjoin any action against them arising from a collision involving their vessel and to confine any resulting liability to the value of their interest in the vessel, which they estimate as $15,000.[3]  The vessel in question is Limitation Plaintiffs' "recreational vessel, a 21-foot 1998 Correct Craft Air Nautique" (the "Nautique").[4]  As described in the complaint, Limitation Plaintiffs' son, Reagan Martz, was operating the Nautique on June 9, 2018 on Flat Lake when it collided with an inflatable raft being towed by a vessel operated by Andrew Horazdovsky.[5]  Jennifer Horazdovsky was in the raft and as a result of the collision, she died.[6]  On June 4, 2020, Mr. Horazdovsky initiated an action in Alaska Superior Court bringing several claims against Jane and William Martz, among others, arising under state tort law and federal maritime and admiralty law.[7]

---

[2] Docket 1 (Complaint).

[3] Docket 1 at 6; Docket 1 at 4, ¶ 13.

[4] Docket 1 at 2, ¶ 3.

[5] Docket 1 at 3, ¶¶ 7–10.

[6] Docket 1 at 3, ¶¶ 7–10.

[7] Docket 1 at 3–4, ¶ 11; *see also* Docket 1-1 (Horazdovsky Complaint).  The action in state court is *Horazdovsky v. Martz, et al.*, Case No. 3AN-20-06488CI.  Mr. Horazdovsky brought the action in his personal capacity, as well as in his capacity as personal representative of Jennifer Horazdovsky's estate, and on behalf of their minor child.  *See* Docket 1-1 at 1.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 2 of 30
Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 2 of 30

On June 30, 2020, finding that Limitation Plaintiffs had complied with the procedural requirements necessary to initiate an action to limit liability pursuant to 46 U.S.C. § 30511, the Court appointed a Trustee to hold title to the Nautique as well as a $1,000 deposit from Limitation Plaintiffs for costs.[8]  As prescribed by the statute, the Court ordered that all claims against Limitation Plaintiffs and their property shall cease and enjoined the further prosecution of any action or proceeding against them with respect to any claim subject to limitation, including those in the state court action.[9]

On July 3, 2020, Claimant filed the instant motion for summary judgment and for vacatur of the Court's June 30, 2020 injunction.[10]  On July 23, 2020, Limitation Plaintiffs filed a cross-motion for partial summary judgment on the issue of timeliness.[11]

---

[8] Docket 17 at 5.

[9] Docket 17. *See In re Complaint of Moog*, Case No. 3:19-cv-00030-DCN, 2019 WL 3849152, at *3 (D. Idaho Aug. 14, 2019); 46 U.S.C. § 30511(c) ("When an action has been brought under this section . . . all claims and proceedings against the owner related to the matter in question shall cease); Fed. R. Civ. P. Supp. R. F(3) ("On application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action.").  The Court's order also served as notice to any person claiming damages as a result of the June 9, 2018 collision of the Nautique to file any claims with this Court prior to August 31, 2020.  Docket 17 at 6.  No other claims were filed.

[10] Docket 19.

[11] Docket 24.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 3 of 30
Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 3 of 30

## B.    The Parties' Correspondence

Prior to commencement of the state court action, counsel for Limitation Plaintiffs and counsel for Claimant exchanged a series of e-mails and letters.

On June 18, 2018, on behalf of Claimant, attorney Timothy Lamb sent a letter to Reagan Martz captioned "Re: Request for information concerning the boat owner and whether the boat was insured for the accident at Flat Lake."[12]  Mr. Lamb indicated that he was "assisting Andrew Horazdovsky in searching for any potential insurance coverage that might be available to compensate the Estate of his deceased wife and their small child," and asked for the name and contact information of the vessel owner, and of their insurance broker, if any.[13]

On October 23, 2018, also on behalf of Claimant, attorney Carl Cook emailed attorney Jonathon Katcher, counsel for the Martzes, requesting "the statement of coverage for the insurance policies on the boat [Reagan] Martz was driving and the property he was staying at that day."[14]  Mr. Katcher responded that there was no insurance for the boat, and that the property did not belong to the Martzes.[15]  The following day, Mr. Cook inquired about Reagan Martz's residence and any accompanying insurance and whether his criminal attorney was being

---

[12] Docket 25-4 at 11.

[13] Docket 25-4 at 11.

[14] Docket 25-4 at 13.

[15] Docket 25-4 at 13.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 4 of 30
Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 4 of 30

paid by an insurance company.[16] Mr. Cook also asked for the identity of the vessel owner.[17] On November 8, 2018, Mr. Cook followed up on his inquiries with a letter to Mr. Katcher titled "Re: Horazdovsky vs. Martz" ("Cook Letter).[18] On November 20, 2018, Mr. Katcher responded by letter also captioned "Re: Horazdovsky vs. Martz" ("November Katcher Letter") wherein he explained that Reagan Martz did not have renters' insurance, and that there was no insurance company paying for any attorneys working on the Martzes' behalf.[19] The November Katcher Letter also identified William and Jane Martz as the owners of the Nautique at the time of the accident.[20]

On December 4, 2018, a third attorney for Claimant, Robert Stone, addressed a letter to Mr. Katcher captioned "Re: *Horazdovsky v. Reagan Martz, William and Jane Martz, and Betty Barce*" ("Stone Letter").[21] It stated, in part:

> I have had conversations with attorney Carl Cook regarding a boating accident that occurred on or near Flat Lake, on or about June 9, 2018. I write to seek clarification regarding a number of insurance coverage issues.
>
> It is my understanding that Reagan Martz, son of William and Jane Martz, was drinking heavily at a party sponsored by William and Jane Martz. I also understand that Reagan's grandmother, Betty Barce,

---

[16] Docket 25-4 at 16.

[17] Docket 25-4 at 19.

[18] Docket 25-4 at 22; Docket 19-1 at 1.

[19] Docket 25-4 at 24; Docket 19-2.

[20] Docket 25-4 at 24; Docket 19-2.

[21] Docket 25-4 at 26; Docket 19-3.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 5 of 30
Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 5 of 30

has an ownership interest in the property. It is also my understanding that Reagan was a permissive user of a boat owned by his parents.

The facts, as conveyed to me, suggest that Reagan Martz was severely intoxicated, and that as a result of such intoxication, he collided with a raft occupied by Jennifer Horazdovsky and two other female occupants. As a result of the collision, Jennifer Horazdovsky died. The other two occupants were seriously injured.

\* \* \*

I have been told that Reagan Martz fled the scene, changed from the boat to a jet ski, and continued to flee the scene until he was ultimately apprehended.

It is my understanding that Reagan Martz has been charged with manslaughter, assault, and driving under the influence.

You can appreciate our interest in investigating what potential coverages exist to pay for the damages caused. Our investigation is not complete. We are also not yet certain whether William Martz or Jane Martz bear any responsibility.

\* \* \*

I would like to avoid unnecessarily naming parties to a lawsuit.

\* \* \*

If there has been a tender of coverage to any insurance companies, please advise. I am interested in receiving a copy of any denial of coverage, acceptance of coverage, and/or any reservation of rights issued by any insurer to either Betty Barce, William or Jane Martz, or Reagan Martz, regarding this June 9, 2018 collision.[22]

On December 5, 2018, Mr. Katcher responded by letter captioned "Re:

*Horazdovsky v. Martz*" ("December Katcher Letter") stating, in part:

The alleged party in question was ***not*** in any manner sponsored or supported by William and/or Jane Martz.

---

[22] Docket 25-4 at 26–28; Docket 19-3 at 1–5.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 6 of 30
Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 6 of 30

> The cabin is ***not*** owned by any member of the Martz family. Our information is that the cabin is owned by the family of Darren Barce. <u>See</u> my October 23, 2018 email to Mr. Cook stating the same.
>
> \* \* \*
>
> I have investigated and confirmed that Reagan Martz had no insurance coverage of any kind for this accident. There is no basis for William and Jane Martz having any liability for this accident. In any event, William and Jane Martz had no insurance coverage that would apply to this accident.
>
> \* \* \*
>
> In light of the absence of any colorable assertion of coverage for this accident under any insurance policies that might apply to Reagan, William or Jane Martz, we have not tendered this claim to any insurance companies.[23]

According to an affidavit from Mr. Katcher submitted in support of Limitation Plaintiffs' motion, in referencing "this claim" in his December Letter, he "was not stating that the Horazdovskys had provided written notice of a claim," but "was merely stating that we had not tendered a claim for insurance coverage to any insurance company."[24] Mr. Katcher, William Martz, and Jane Martz each declare by affidavit that they did not consider any of the correspondence from Claimant's attorneys to be a written notice of a claim.[25] Mr. Katcher adds that, in fact,

---

[23] Docket 25-4 at 30–31; Docket 19-4 at 1–2 (emphasis in original).

[24] Docket 25-4 at 7–8, ¶ 11.

[25] Docket 25-2 at 3, ¶ 5 (William Martz Aff.) ("Prior to my receiving that complaint, I had never received any written notice of any claim against me or Jane Martz related to the June 9, 2018 accident involving the Nautique."); Docket 25-3 at 3, ¶ 5 (Jane Martz Aff.) ("Prior to my receiving that complaint, I had never received any written notice of any claim against me or Bill Martz related to the June 9, 2018 accident involving the Nautique."); Docket 25-4 at 4, ¶ 2 (Katcher Aff.) ("None of those pre-state court lawsuit communications ever provided written notice to me of any claim against William Martz or Jane Martz related to the accident.").

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 7 of 30
Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 7 of 30

sometime after the parties' correspondence, he spoke by telephone with Mr. Stone, who informed him that "it was not his practice to sue people who were not insured."[26]

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333, which grants it original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction."[27]

## LEGAL STANDARD

### A.    Summary Judgment

Federal Rule of Civil Procedure 56(a) directs a court to grant summary judgment if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the non-moving party and a dispute is "material" if it could affect the outcome of the suit under the governing law.[28]  When considering a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[29]

---

[26] Docket 25-4 at 8, ¶ 12.

[27] *See also* U.S. Const. art. III, § 2, cl. 2 ("The judicial Power shall extend . . . to all Cases of admiralty and maritime Jurisdiction . . . .").

[28] *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

[29] *Moldex-Metric, Inc. v. McKeon Prods., Inc.*, 891 F.3d 878, 881 (9th Cir. 2018) (alteration in

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 8 of 30

### B. The Limitation of Liability Act

The Limitation of Liability Act (the "Act") provides that "the liability of the owner of a vessel for any claim, debt, or liability [subject to the Act] . . . shall not exceed the value of the vessel and pending freight."[30] Claims arising from "injury by collision" are subject to limitation under the Act provided that the conduct at issue occurred "without the privity or knowledge of the owner."[31] To take advantage of these protections, the owner of a vessel must bring a civil action in a federal district court "within 6 months after a claimant gives the owner written notice of a claim."[32]

### DISCUSSION

Claimant moves for summary judgment and dismissal of the instant matter, contending that the case was not filed within six months of written notice of a claim and is thus time-barred.[33] Claimant maintains that the complaint in this action was filed nearly 19 months after the vessel owners first received written notice of a

---

original) (quoting *Anderson*, 477 U.S. at 255).

[30] 46 U.S.C. § 30505(a).

[31] 46 U.S.C. § 30505(a); *see also In re Complaint of Ross Island Sand & Gravel*, 226 F.3d 1015, 1017 (9th Cir. 2000) ("A limitation of liability action is a proceeding in admiralty for vessel owners that permits them to limit their lability (if any) to their interest in the vessel and its freight, provided that the loss was incurred without their privity or knowledge.").

[32] 46 U.S.C. § 30511(a); *see also* Fed. R. Civ. P. Supp. R. F(1) ("Not later than six months after receipt of a claim in writing, any vessel owner may file a complaint in the appropriate district court, as provided in subdivision (9) of this rule, for limitation of liability pursuant to statute.").

[33] Docket 19 at 1.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 9 of 30

claim arising from the June 9, 2018 collision of the Nautique.[34]  According to

Claimant, the owners "received written notice of a claim as early as November 8,

2018," referencing the Cook Letter and the November Katcher Letter

acknowledging its receipt.[35]  Claimant adds that the vessel owners' attorney

acknowledged the existence of "this claim" in the December Katcher Letter,

demonstrating that the vessel owners were on notice of a claim.[36]

Limitation Plaintiffs respond that they did not receive written notice of a claim

until the lawsuit was filed in Alaska Superior Court on June 4, 2020.  They

acknowledge that they "received inquiries about the availability of insurance before

then" but maintain that "none of these insurance-related communications asserted

a demand of a right or supposed right against William or Jane Martz[,] . . . blamed

[them] for any damage or loss, . . . [or] called upon [them] to pay anything due to

anyone."[37]  Limitation Plaintiffs contend that these inquiries did not constitute

written notice of a claim, and therefore, that the instant action was timely initiated

just three weeks after the state court complaint was filed.[38]

---

[34] Docket 19 at 4–5.

[35] Docket 19 at 8 (citing Docket 19-1); Docket 19 at 8 (citing Docket 19-2).

[36] Docket 19 at 8 (quoting Docket 19-4 at 2).

[37] Docket 23 at 2.

[38] Docket 23 at 3.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 10 of 30
Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 10 of 30

### A. The Parties' Arguments

The parties dispute both the requirements for a written notice of claim as well as the implications of the substance of Claimant's correspondence.[39]

#### i. Requirements for Written Notice

Claimant proposes a holistic, fact-intensive framework for evaluating a written notice. He contends that correspondence should "be read as a whole,"[40] and cites the District of Alaska's *Rachel K. Inc., Limitations Proceedings* for the proposition that "district courts deal with the adequacy of notice on an ad hoc basis."[41] Claimant focuses on an excerpt from a law review article cited in *Rachel K.*, which posits that "it has been said that the notice is sufficient if it provides 'all details of the situation with regard to the claim,' by which the court appears to have meant little more than the identification of the incident and the party injured and the nature of the damages.'"[42] Claimant emphasizes that the limitation of liability statute only requires written notice of a claim, and not written notice that a claim will be pursued.[43]

---

[39] The parties agree that the Ninth Circuit has not weighed in on the issue. *See* Docket 25 at 13; Docket 19 at 9 (quoting *Rachel K. Inc., Limitations Proceedings,* Case No. A95-0220-CV, 1996 WL 662495 (D. Alaska July 12, 1996)).

[40] Docket 27 at 4.

[41] Docket 19 at 9 (quoting Case No. A95-0220-CV, 1996 WL 662495 (D. Alaska July 12, 1996)).

[42] 1996 WL 662495, at *1 (D. Alaska) (quoting Graydon S. Starling, *Limitation Practice & Procedure*, 53 Tulane L. Rev. 1134, 1144 (1979)).

[43] Docket 27 at 2, 13–14.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 11 of 30
Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 11 of 30

In contrast, Limitation Plaintiffs urge the Court to apply a factored test to determine whether Claimant's pre-suit correspondence constitutes written notice of a claim.[44] They contend that strict compliance with the notice requirement is important to prevent undue burdens on vessel owners who must post security, as well as to avoid needless litigation in federal courts and to prevent gamesmanship by litigants.[45] Limitation Plaintiffs highlight two existing tests that several courts have employed.[46] The first is referred to as the *Doxsee/McCarthy* test and asks whether the notice "informs the vessel owner of an actual or potential claim . . . which may exceed the value of the vessel . . . and is subject to limitation."[47] The second test, referred to as the *Moreira* or *Richardson* test, asks whether the notice "(1) demand[s] a right or supposed right, (2) blame[s] the vessel owner for any damage or loss, and (3) call[s] on the vessel owner for anything due."[48] Limitation Plaintiffs urge the Court to adopt the *Moreira/Richardson* test. Relying on an

---

[44] Docket 25 at 14.

[45] Docket 25 at 23.

[46] Docket 25 at 14.

[47] *Orion Marine Constr., Inc. v. Carroll,* 918 F.3d 1323, 1330 (11th Cir. 2019) (quoting *Doxsee Sea Clam Co. v. Brown*, 13 F.3d 550, 554 (2d Cir. 1994)). *See also In re Complaint of McCarthy Bros. Co./Clark Bridge*, 83 F.3d 821, 829 (7th Cir. 1996) ("The most authoritative case states that a letter sent to a shipowner by a claimant is sufficient to trigger the six-month period if (1) it informs the shipowner of an actual or potential claim (2) which may exceed the value of the vessel (3) and is subject to limitation. *Doxsee Sea Clam Co. v. Brown*, 13 F.3d 550, 554 (2d Cir. 1994). As to the latter of these requirements, the written notice of claim must reveal a 'reasonable possibility' that the claim made is one subject to limitation.").

[48] *Orion,* 918 F.3d at 1330–31 (citing *Rodriguez Moreira v. Lemay*, 659 F. Supp. 89, 91 (S.D. Fla. 1987)). *See also Richardson Constr. Co.,* 850 F. Supp. 555, 557 (S.D. Tex. 1993) (citing *Moreira* factored test).

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 12 of 30
Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 12 of 30

Eleventh Circuit decision, they contend that the *Doxsee/McCarthy* test effectively encompasses *Moreira*—which "teaches us what signals a 'claim'"—and simply adds on a value requirement.[49]  Thus, Limitation Plaintiffs contend that "to satisfy 46 U.S.C. § 30511 and Fed. R. Civ. P. Supp. F., the notice must include the *Moreira/Richardson* factors,"[50] maintaining that even those courts that adopt *Doxsee/McCarthy* still examine whether the *Moreira* test is met.[51]

In his reply, Claimant cites to several different tests.  Claimant highlights the standard from the Fifth Circuit, which sets out a two part inquiry: "(1) whether the writing communicates the *reasonable possibility* of a claim, and (2) whether it communicates the *reasonable possibility* of damages in excess of the vessel's value."[52]

---

[49] Docket 25 at 16 (citing *Orion,* 918 F.3d at 1330–31).

[50] Docket 35 at 10.

[51] Docket 25 at 16–17 (citing *In re Henry Marine Serv., Inc.*, 136 F. Supp. 3d 401, 411 (E.D.N.Y. 2015) and *In re Complaint of Salty Sons Sports Fishing, Inc.*, 191 F. Supp. 2d 631, 636 (D. Md. 2002)). In *Henry Marine Serv.*, the district court applied the *Doxsee/McCarthy* test, but in concluding that the email in question "did not provide . . . sufficient written notice of . . . potential damages," also relied on *Moreira*.  136 F. Supp. 3d at 410–11.  Similarly, in *Salty Sons*, the district court applied the *Moreira/Richardson* test but also considered whether there is a reasonable possibility that the claims would exceed the value of the ship, as required under *Doxsee*.  191 F. Supp. 2d. at 636.  Thus, both courts seemingly adopted elements from both tests.

[52] Docket 27 at 3 (quoting *In re CDM Resource Mgmt., LLC*, Case No. 15-112, 2015 WL 6473155, at *6 (E.D. La. 2015) (quoting *Complaint of RLB Contracting, Inc. v. Butler*, 773 F.3d 596, 602–03 (5th Cir. 2014) (emphasis in original)).  Limitation Plaintiffs seek to distinguish *CDM*, noting that the letter at issue there contained, among other things, a request for personnel files, medical records, photos, statements by the parties, and other documentation, which the court had likened to discovery, rather than simply making insurance inquiries. Docket 35 at 11–13.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 13 of 30

### ii. Content of the correspondence

Claimant contends that the written correspondence between the parties in 2018 "clearly identif[ies] the details of the situation with regard to the claim" by describing the vessel collision.[53] He adds that the Stone Letter was captioned to reflect the parties dispute as "Re: *Horazdovsky v. Reagan Martz, William and Jane Martz, and Betty Barce,*"[54] and that courts have credited such styling as providing notice of a potential lawsuit.[55] Claimant contends that the detailed letter, along with the caption and Mr. Katcher's subsequent reference to "this claim," provide "conclusive evidence of Limitation Plaintiffs having sufficient notice of the reasonable probability of a possible action" against them.[56]

Limitation Plaintiffs respond that Claimant's correspondence does not satisfy the *Moreira/Richardson* test as it is devoid of "any demand of right, any

---

[53] Docket 19 at 9. Claimant adds that Limitation Plaintiffs were on notice of the possibility of a claim as soon as the accident happened, since boat owners are strictly vicariously liable for the negligence of a permissive user of the boat under Alaska law. Docket 27 at 5 (citing Alaska Statute 05.25.040). However, the federal limitations statute requires written notice of a claim, and therefore Limitation Plaintiffs' knowledge of vicarious liability separate and apart from any written notice is not dispositive.

[54] Docket 27 at 7.

[55] Docket 27 at 6 (citing *In re Complaint of Beesley's Point Sea-Doo, Inc.*, 956 F. Supp. 538, 541 (D.N.J. 1997)). In *Beesley's*, the district court dismissed a petition for limitation of liability as time-barred after evaluating the "whole tenor" of the correspondence between the parties. *Id.* at 541. Among other things, it credited that the letters indicated the claimant was injured on the owner's jet-skis, provided a theory of liability (negligence), urged the owner to inform his insurance carrier, made reference to claims, and itemized medical expenses. *Id.* at 542–544. The court also gave weight to the fact that a letter was captioned in the manner of a lawsuit: "Re: Gillespie vs. Beesley's Point Sea Doo, Inc. t/a Sea Isle Sea Doo, et al." along with the date of the incident. *Id.* at 542.

[56] Docket 27 at 7.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 14 of 30

Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 14 of 30

blaming of William or Jane Martz for damage or loss, any call for something due . . . or any accusations of negligence or any demands for payment."[57] They maintain it lacks an adversarial tone and is tentative about legal action,[58] and that the caption of *Horazdovsky vs. Martz* only indicates a "present controversy" and not a claim.[59] Limitation Plaintiffs contend that the written notice must do more than recite facts creating the potential for a claim.[60] They maintain that Mr. Katcher's reference to "this claim" in his December Letter was a reference to a claim for insurance coverage information made in response to Mr. Stone's questions.[61] Limitation Plaintiffs contend that it is "entirely possible to inquire about insurance without making a claim," reasoning that the attorneys did so to determine whether it was worth making a claim.[62] They contend that, regardless, the issue is not

---

[57] Docket 25 at 25.

[58] Docket 25 at 25.

[59] Docket 25 at 21–22 (quoting *Doxsee*, 13 F.3d at 554).

[60] Docket 25 at 18–19 (citing *Rachel K*, *Petition of J.E. Brenneman Co.*, 157 F. Supp. 295, 297 (E.D. Pa. 1957); *The Belleville*, 35 F. Supp. 934 (E.D.N.Y. 1940); *Petition of Anthony O'Boyle, Inc.,* 51 F. Supp. 430, 431 (S.D.N.Y. 1943); and *In re Henry Marine Serv., Inc.*, 136 F. Supp. 3d at 411)). Limitation Plaintiffs acknowledge that the *Doxsee* test refers to a "potential claim," but contend that it is best understood as referencing a potential lawsuit, and not merely the potential existence of a claim. Docket 25 at 19–20 (citing *In re the Complaint of RLB Contracting, Inc.*, 773 F.3d 596, 604 (5th Cir. 2014)).

[61] Docket 25 at 26. In his affidavit, Mr. Katcher states that his use of the term "this claim" was in reference to the fact that they "had not tendered a claim for insurance coverage." Docket 25-4 at 7, ¶ 11.

[62] Docket 35 at 7. Limitation Plaintiffs also contend that courts have held that "insurance inquiries do not constitute written notice of a claim." Docket 25 at 21. In support of this statement, they cite three cases: *In re Hollis B. Corp.*, Case No. 2016-14, 2016 WL 8732310, at *3 (D.V.I. Sept. 30, 2016); *In re Cameron*, Case No. 3:17-cv-1460-J-20JRK, 2018 WL 2688758, at *2 (M.D. Fla. April 18, 2018); and *Int'l Ship Repair & Marine Servs., Inc. v. Estate*

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 15 of 30

whether Mr. Katcher referenced a claim, but rather, whether Claimant sufficiently put them on notice of a claim.[63]  Limitation Plaintiffs emphasize that, in light of Mr. Stone's verbal representation that he does not sue individuals without insurance, they had no reason to bring a limitation action,[64]  and they note that Claimant never responded to Mr. Katcher's statement that he saw no basis for liability as to

---

*of Morales-Montalvo*, Case No. 8:08-cv-1617-T-23AEP, 2010 WL 181575, at *4 (M.D. Fla. Jan. 12, 2010).  Upon review, the Court finds that none of these cases holds that insurance inquiries cannot satisfy a written notice of claim; rather, in each opinion, the district court carefully considered the relevant correspondence and found it wanting in some respect.  The cases are factually distinct from the one at bar.  For instance, the notice in *Hollis* did not specify the details of the accident or the injuries suffered.  2016 WL 8732310, at *3.  In *Cameron*, the correspondence was entirely by text message and lacked any Docket 25 at 18–19 (citing *Rachel K*, *Petition of J.E. Brenneman Co.*, 157 F. Supp. 295, 297 (E.D. Pa. 1957); *The Belleville*, 35 F. Supp. 934 (E.D.N.Y. 1940); *Petition of Anthony O'Boyle, Inc.*, 51 F. Supp. 430, 431 (S.D.N.Y. 1943); and *In re Henry Marine Serv., Inc.*, 136 F. Supp. 3d at 411)). Limitation Plaintiffs acknowledge that the *Doxsee* test refers to a "potential claim," but contend that it is best understood as referencing a potential lawsuit, and not merely the potential existence of a claim.  Docket 25 at 19–20 (citing *In re the Complaint of RLB Contracting, Inc.*, 773 F.3d 596, 604 (5th Cir. 2014)).

[62] Docket 25 at 26.  In his affidavit, Mr. Katcher states that his use of the term "this claim" was in reference to the fact that they "had not tendered a claim for insurance coverage."  Docket 25-4 at 7, ¶ 11.

[62] Docket 35 at 7. Limitation Plaintiffs also contend that courts have held that "insurance inquiries do not constitute written notice of a claim."  Docket 25 at 21.  In support of this statement, they cite three cases:  *In re Hollis B. Corp.*, Case No. 2016-14, 2016 WL 8732310, at *3 (D.V.I. Sept. 30, 2016); *In re Cameron*, Case No. 3:17-cv-1460-J-20JRK, 2018 WL 2688758, at *2 (M.D. Fla. April 18, 2018); and *Int'l Ship Repair & Marine Servs., Inc. v. Estate of Morales-Montalvo*, Case of the formality of the letters here.  2018 WL 2688758, at *2.  And in *International Ship Repair,* the letters only requested statutorily mandated disclosure of insurance information.  2010 WL 181575, at *4.

[63] Docket 35 at 8.

[64] Docket 25 at 24.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 16 of 30

Limitation Plaintiffs.[65]  Limitation Plaintiffs conclude that, all in all, "these letters hardly paint a picture of a lawsuit in the offing."[66]

In his reply, Claimant disputes Limitation Plaintiffs' contention that the correspondence does not satisfy the *Moreira* factors; he contends that the correspondence "paint[s] a vivid picture of the incident"[67] and clearly indicates the basis of his claim by stating that Reagan Martz was a permissive user of the Nautique when he collided with the raft carrying Jennifer Horazdovsky, causing her death.[68]  Claimant adds that the Stone Letter specifically mentions the damages resulting from the incident involving Limitation Plaintiffs' vessel,[69] and emphasizes that the vessel owners conceded that the value element of the *Doxsee/McCarthy* test is met.[70]  Lastly, Claimant disputes that the vessel owners could have interpreted the letters as relating exclusively to insurance inquiries,

---

[65] Docket 25 at 22 (citing *In re Henry Marine Serv., Inc.*, 136 F. Supp. 3d at 410).

[66] Docket 25 at 25.

[67] Docket 27 at 9.  Claimant relies on the analysis in *Okeanos Ocean Research Found., Inc. v. M/V Finback*, 704 F. Supp. 412, 414 (S.D.N.Y. 1989).  There, the District Court for the Southern District of New York distinguished the letter at issue, which it found did not constitute notice, from letters found sufficient by other courts, including the Second Circuit, on the basis that it was "void of *any* details of the incident in question . . . [and] does not mention the cause of the injuries, the type of the injuries sustained or [their] severity . . . ." *Id.* at 416.

[68] Docket 27 at 10.

[69] Docket 27 at 11.

[70] Docket 27 at 3.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 17 of 30

reasoning that "[i]t is axiomatic that for there to [be] an investigation of insurance coverage, there must be a claim."[71]

## B.    Analysis

The parties do not dispute any material facts; their dispute is limited to whether Claimant's pre-suit written correspondence provides notice of a claim as required by 46 U.S.C. § 30511.  If it does, then Limitation Plaintiffs' June 25, 2020 petition is untimely and dismissal of the limitation proceeding is warranted.  If it does not, then this action may proceed.[72]

The Limitation of Liability Act of 1851 adopted a rule limiting a shipowner's liability to the value of their vessel and cargo in an effort to encourage shipbuilding and investment.[73]  As it exists today, the central provision of the Act allows the owner of a vessel to limit their liability to no more than "the value of the vessel and pending freight" for any claim subject to limitation.[74]  This provision covers claims for "injury by collision," including death.[75]  In its original form, the Act did not provide

---

[71] Docket 27 at 12.  In their reply to the cross-motion, Limitation Plaintiffs maintain that "[t]here is no such axiom," as it is "entirely possible to inquire about insurance without making a claim." Docket 35 at 7.

[72] *But see Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 448–51, 454 (2001) (recognizing conflict between saving to suitors clause and the Limitation Act, and holding that district court may dissolve injunction, stay limitation proceedings, and allow claimant to proceed in state court, if vessel owner's right to seek limitation can be adequately protected).

[73] *Esta Later Charters, Inc. v. Ignacio*, 875 F.2d 234, 235 (9th Cir. 1989); *In re Complaint of McCarthy Bros. Co.*, 83 F.3d 821, 826 (7th Cir. 1996).

[74] 46 U.S.C. § 30505(a).

[75] 46 U.S.C. § 30505(b); *see also Matter of City of Huntington Beach,* Case No. SACV 10-641-

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 18 of 30

a time limit for vessel owners to petition for limitation of liability, and courts would allow petitions even after entry of judgment.[76]  However, the Act was amended to include a six-month time limit for filing a petition: "[t]he action must be brought within 6 months after a claimant gives the owner written notice of a claim."[77]

The Act does not specify the requirements for the written notice of a claim and while many district courts and some circuit courts have addressed the issue, the Ninth Circuit has not.  Courts have adopted a variety of approaches to evaluate a written notice of a claim; however, there exist some well-established principles. For one, it is widely accepted that a formal complaint is not necessary to satisfy the requirement and that letters by claimants to vessel owners may constitute notice.[78]  Moreover, the notice need not exist in a singular letter and can be issued through a body of correspondence.[79]  It is also the case that courts evaluating

---

JST (RNBx), 2011 WL 13225113, at *4–5 (C.D. Cal. Apr. 4, 2011) ("Finally, a claim for wrongful death resulting from a collision with a vessel in navigable waters is a claim subject to the limitation.").

[76] *Esta Later Charters,* 875 F.2d at 236.

[77] *Id*. (citing Act of June 5, 1936, Pub. L. No. 662, 49 Stat. 1479 (revising R.S. § 4283 *et seq*. as amended)).

[78] *Doxsee Sea Clam Co. v. Brown.*, 13 F.3d 550, 554 (2d Cir. 1994); *In the Matter of the Complaint of Vulcan Constr. Materials, LLC*, 427 F. Supp. 3d 694, 696–97 (E.D. Va. 2019) ("The statute does not elaborate on what constitutes appropriate notice, although '[i]t is well-settled that a letter sent by a claimant (or claimant's attorney) to a vessel owner may constitute notice of a claim . . . .") (quoting *Norfolk Dredging Co. v. Wiley*, 357 F. Supp. 2d 944, 947–49 (E.D. Va. 2005)).

[79] *See In re the Matter of the Complaint of RLB Contracting Inc.*, 773 F.3d 596, 603 (5th Cir. 2014) (collecting cases where courts have considered "a body of correspondence rather than each of its individual constituent parts").

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 19 of 30

notices apply "a broad and flexible standard of review—reading letters of notice in their entirety and considering their 'whole tenor'" as they engage in a fact-intensive inquiry,[80] even when applying a factored test.[81]

Several such tests have emerged as courts grapple with determining what constitutes a notice of a claim. These include those identified by Limitation Plaintiffs—the *Doxsee/McCarthy* test and the *Moreira/Richardson* test—as well as the Fifth Circuit's two-part "reasonable possibility" test identified by Claimant. The elements of each of these tests is set out *supra*.[82] This is by no means a comprehensive list, but illustrates some of the variety—and some of the similarities—among the existing tests, none of which is binding on this Court.[83]

---

[80] *Doxsee Sea Clam Co. v. Brown.*, 13 F.3d 550, 554 (2d Cir. 1994) (quoting *In re Allen N. Spooner & Sons, Inc.*, 253 F.2d 584, 586 (2d Cir. 1958)); *see also Rodriguez Moreira v. Lemay*, 659 F. Supp. 89, 90–91 (S.D. Fla. 1987) ("Although the notice of claim need not be presented in a particular form, it must inform the owner of the claimant's intention to seek damages from the owner.").

[81] *Vulcan*, 427 F. Supp. 3d at 697 ("Most courts have utilized a variation of the above tests in conducting a holistic, fact-intensive approach to determining whether a letter is sufficient."); *RLB Contracting Inc.*, 773 F.3d at 605 (concluding that "mandating that written notice contain 'magic words' or specific elements might well impose a requirement not found in the statutory text"); *Int'l Ship Repair & Marine Services, Inc. v. Estate of Wilfredo Morales-Montalvo*, Case No. 808-cv-1617-T-23AEP, 2010 WL 181575, at *3 (M.D. Fla. Jan. 12, 2010) (summarizing available tests but adding that the notice of claim "need not be presented in a particular form").

[82] *See* supra at 12–13.

[83] For example, Claimant highlighted other tests. Docket 27 at 3, 12. *See also In re Oceanic Fleet, Inc.*, 807 F. Supp. 1261, 1262 (E.D. La. 1992) ("Courts have concluded that written notice must inform the owner both of 'details of the incident' and 'that the owner appeared to be responsible for the damage in question.'") (quoting *In re Complaint of Okeanos Ocean Research Found., Inc.*, 704 F. Supp. 412, 415 (S.D.N.Y. 1989)); *Coastal Excursions, Inc. v. Khoury*, Case No. 3:07 CV 2782, 2007 WL 4553961 (N.D. Ohio Dec. 19, 2007) ("Courts have also determined that the written notice must inform the vessel owner of (1) the details of the occurrence, (2) the claimant's assertion that the owner was to blame for the injury, and (3) his intention to seek damages from the vessel owner") (quoting *In re Wepfer Marine*, 344 F. Supp.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 20 of 30

Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 20 of 30

Limitation Plaintiffs urge the Court to apply the *Moreira/Richardson* factors—either on their own or as a subset of the *Doxsee/McCarthy* test. However, at least one circuit court has found that the *Doxsee/McCarthy* test is "the most widely-accepted" and most authoritative, whereas the *Moreira* test has "fallen into desuetude."[84] The Eleventh Circuit concluded that the *Doxsee/McCarthy* test was superior because the value requirement "serves the six-month limitation period's purpose by encouraging shipowners to act promptly while at the same time eliminating consideration of small-value cases unlikely to benefit from the Act's protection."[85] The Court is persuaded that a value requirement aligns with the purposes of the Act and moreover, finds that hueing too strictly to enumerated factors, like those in the *Moreira/Richardson* test, is counterproductive to what is an inherently fact-specific inquiry.[86]

The Court also finds that the notice need not make an unequivocal demand to the vessel owner for compensation for a loss; it is enough if the notice presents a reasonable possibility of a claim subject to limitation. The Fifth Circuit, in

---

2d 1120, 1128 (W.D. Tenn. 2004)).

[84] *Orion Marine Constr., Inc. v. Carroll*, 918 F.3d 1323, 1331 (11th Cir. 2019).

[85] *Id.*

[86] *See, e.g., RLB Contracting, Inc.*, 773 F.3d at 605 ("mandating that written notice contain 'magic words' or specific elements might well impose a requirement not found in the statutory text"); *In re Complaint of Beesley's Point Sea-Doo, Inc.*, 956 F. Supp. 538, 541 (D.N.J. 1997) (reasoning that the court must consider the "whole tenor" of the letter and not apply *Richardson* factors too narrowly and concluding that the letter constituted written notice of a claim "although the letter does not include an express 'demand of a right or supposed right'").

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 21 of 30

adopting this approach, explained that "[t]he purpose of the 'reasonable possibility' standard [as to the amount of the loss] is to place the burden of investigating claims on the vessel owner," as it is the vessel owner that has much to gain from the statutory right to limit liability.[87]  The Circuit Court then concluded that this same standard should apply to the first prong as well—the reasonable possibility of a claim—by reasoning that "it would be inconsistent to reverse that risk when it comes to notice of a potential claim,." The Fifth Circuit also reasoned that imposing a clear demand requirement instead of a reasonability possibility of such a demand being made "might well impose a requirement not found in the statutory text."[88] Rather, the Fifth Circuit adopted "a broad and flexible standard of review—reading letters of notice in their entirety and considering their 'whole tenor'—when determining if sufficient notice was given."[89]

Notably, the *Doxsee/McCarthy* test parallels the Fifth Circuit's "reasonable possibility" test.  Both tests consider whether the written notice informed the vessel owner of a claim—the former asking if the written notice informs the owner of "an actual or potential claim" and the latter whether it communicates the "reasonable possibility" of a claim—and both inquire whether the notice discloses that the

---

[87] *RLB Contracting, Inc.*, 773 F.3d at 602.  *See also In re Eckstein Marine Serv.*, 672 F.3d 310 (5th Cir. 2012).

[88] *RLB Contracting, Inc.*, 773 F.3d at 605.

[89] *Id.* (citing *Doxsee Sea Clam Co. v. Brown*, 13 F.3d 550, 554 (2d Cir. 1994)).

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 22 of 30
Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 22 of 30

damages may exceed the vessel's value. The Court agrees with this approach and considers whether Claimant's correspondence communicates to Limitation Plaintiffs the reasonable possibility of a claim and the reasonable possibility that the claim may exceed the value of the Nautique.

The value requirement is readily determined;  the parties agree that the damages arising from the June 9, 2018 accident at Flat Lake would exceed the value of the Nautique and satisfy the value requirement of either the *Doxsee/McCarthy* or the "reasonable possibility" test.[90]  In the Court's view, Limitation Plaintiffs' knowledge that the potential damages from the fatal accident involving their vessel far exceeded the value of that vessel diminishes the likelihood that they could reasonably interpret Claimant's communications as mere inquiries about insurance.[91]

The key inquiry, however, is whether Claimant's correspondence sufficiently communicated to the vessel owners the reasonable possibility of a claim.  Turning to the correspondence, the Court considers first its style and appearance, as these

---

[90] *See* Docket 25 at 17 ("Limitation Plaintiffs in this case do not contest that, if there had been a written notice of a claim against them for the fatal accident that occurred here, and if that writing had satisfied the basic requirements for it to be considered a <u>claim</u> . . . then on these facts it would certainly have also satisfied the additional value/amount requirement that *Doxsee/McCarthy* imposed."); *see* Docket 27 at 3.  Claimant's correspondence clearly states that Jennifer Horazdovsky lost her life in the collision and that others were injured as well.  *See* Docket 25-4 at 11, 26, 27; Docket 19-3 at 3.

[91] *In re Ufo Chuting of Hawaii*, 233 F. Supp. 2d. 1254, 1259 (D. Haw. 2001) (distinguishing case where injured party had "clearly suffered significant injuries known to the owner," noting that "even before the notice was sent, the boat owner knew that damages could exceed the value of the speedboat and its then pending freight").

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 23 of 30
Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 23 of 30

are "necessary components to analyzing the note in its entirety and determining the tenor of the note as a whole."[92]  All of the correspondence from Claimant to vessel owners came by way of his attorneys, immediately lending it some formality and import.  Alongside an e-mail exchange, Claimant sent three letters: the Lamb Letter,[93] the Cook Letter, and the Stone Letter.[94]  Each appears on law firm letterhead, and the Cook and Stone Letters are captioned with reference to the adversarial posture of the parties.[95]  In *Beesley's*, the District Court for the District of New Jersey found a similarly styled caption to satisfy the notice requirement holding that "[a]lthough the letter does not include an express 'demand of a right or supposed right,' the caption at the top provides sufficient notice of potential lawsuit."[96]  The Court finds that the professional style of Claimant's letters and the

---

[92] *Vulcan*, 427 F. Supp. 3d at 698 ("As would any recipient, the Court begins by analyzing the style and appearance of the note.").

[93] The Lamb Letter was addressed to Reagan Martz, and not Limitation Plaintiffs, but was provided to the Martzes' attorney, who treats it as part of the body of correspondence.  *See* Docket 25-4 at 4, ¶¶ 3–4; Docket 25-4 at 11.

[94] *See* Docket 25-4 at 11; Docket 25-4 at 22; Docket 19-1 at 1; Docket 25-4 at 26; Docket 19-3 at 1.

[95] See Docket 25-4 at 26 and Docket 19-3 at 1 (captioned Horazdovsky v. Reagan Martz, William and Jane Martz, and Betty Barce); Docket 25-4 at 22 and Docket 19-1 at 1 (captioned Horazdovsky vs. Martz).

[96] 956 F. Supp. at 542 (letter was captioned "Gillespie vs. Beesley's Point Sea Doo, Inc. t/a Sea Isle Sea Doo, et al" with the date of the accident); *see also Doxsee Sea Clam Co. v. Brown*, 13 F.3d 550, 554 (2d Cir. 1994) (crediting that "the 'Re:' line of the letter was styled in the manner of an actual, present controversy: 'Christian Brown v. Doxsee Sea Clam Company,'" in concluding that letter provided written notice of a claim).

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 24 of 30

captions of the Cook and Stone Letters contribute to the serious tenor of the communications.

The Court turns next to the substance of the correspondence. The first few missives from Claimant are fairly limited in scope. The Lamb Letter provides that Claimant is "searching for any potential insurance coverage that might be available to compensate the Estate of" Jennifer Horazdovsky and asks for the name and contact information of the vessel owner, as well as any insurance information.[97] Similarly, Mr. Cook, in his email exchange with Mr. Katcher and in his letter following up on that exchange, requests information about any insurance coverage for the vessel, or for Reagan Martz separate and apart from his parents, as well as for information about vessel ownership and about funding for Reagan Martz's attorneys' fees.[98] The Court concludes that, on their own, these written communications are insufficient to put the vessel owners on notice of a claim. Although they mention that Claimant is seeking compensation for his wife's estate and for his young child, they are otherwise focused on gathering information from the Martzes.

However, the Stone Letter is far more substantive. It provides significant details about the June 9, 2018 collision and outlines a theory of liability that

---

[97] Docket 25-4 at 11.

[98] Docket 25-4 at 13, 16, 19, 22.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 25 of 30

Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 25 of 30

implicates the vessel owners.[99]  Specifically, Mr. Stone blames Reagan Martz for the collision that resulted in Jennifer Horazdovsky's death and adds that "Reagan was a permissive user of a boat" owned by Limitation Plaintiffs.[100]  Moreover, Mr. Stone expressly mentions a lawsuit, and, by stating that he "would like to avoid unnecessarily naming parties to a lawsuit," communicates that Claimant intends to bring one.[101]  Mr. Stone adds that "[o]ur investigation is not complete . . . [w]e are . . not yet certain whether William Martz or Jane Martz bear any responsibility," indicating that they are among those who could be named in the lawsuit.[102]

The Stone Letter is undoubtedly tentative; however, "a writing may constitute sufficient notice of claim even if it is couched in tentative terms, referring only to the 'possibility' of legal action."[103]  The Court must look at the letter "in its entirety

---

[99] *See Beesley's*, 956 F. Supp. at 544 (holding that a letter conferred notice where it provided an opinion about what caused claimant's injuries, offered a theory of liability, and listed the medical expenses).

[100] Docket 25-4 at 26; Docket 19-3 at 1 ("Reagan Martz was severely intoxicated, and . . . as a result of such intoxication, he collided with a raft. . . [a]s a result of the collision, Jennifer Horazdovsky died.").

[101] Docket 25-4 at 27; Docket 19-3 at 3.

[102] Docket 25-4 at 27; Docket 19-3 at 3.

[103] *In re Complaint of Bayview Charter Boats, Inc.*, 692 F. Supp. 1480, 1485 (E.D.N.Y. 1988). To the extent it is disputed, the Court finds that notice of a potential claim, as opposed to notice of an actual claim, satisfies the statutory requirements.  Limitation Plaintiffs do not point to any authority that expressly supports their contention that a potential claim refers only to a potential lawsuit.  Docket 25 at 20.  The Act requires notice of a claim—not notice of a lawsuit; accordingly, the Court is not persuaded that the reference to a "potential claim" in *Doxsee* should be interpreted strictly as reference to a potential lawsuit and not to a potential claim more broadly.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 26 of 30

to determine whether it is too ambiguous or non-adversarial to constitute notice."[104] In addition to its formal style and adversarial caption, the Stone Letter (1) details the accident and resulting damages, (2) provides a theory by which Limitation Plaintiffs are liable, (3) refers to a lawsuit, and (4) informs the Martzes that their responsibility is under investigation. The Court does not find the letter to be so ambiguous or non-adversarial so as to fail to constitute notice of a claim. The "tentative" language in the Stone Letter is quite similar to the language held to be adequate in *Spooner*, where the claimant's letter stated that "the Port Authority is presently determining the extent of the claim which it may have against you . . . ."[105] After considering the entirety of the letter, the Second Circuit concluded that "[t]o adopt the view that the notice would be effective if the word 'shall' had been substituted for 'may,' but not otherwise, would indeed exalt hair-splitting over substance. Read in its entirety the letter is a notice of claim . . . ."[106] Similarly, the Court finds that the Stone Letter, read in its entirety, constitutes a notice of claim; the disclosures by Claimant are sufficient to put the vessel owners on notice of the reasonable possibility of a claim against them.

Moreover, considering the broader context of Claimant's correspondence further supports the Court's conclusion. "A letter from an attorney that informs a

---

[104] *Norfolk Dredging Co. v. Wiley*, 357 F. Supp. 2d 944, 948 (E.D. Va. 2005).

[105] *In re Allen N. Spooner & Sons, Inc.*, 253 F.2d 584, 586 (2d Cir. 1958).

[106] *Id.* at 586.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 27 of 30

vessel owner of the attorney's representation of a person who was injured while operating that owner's vessel and advises the owner to contact its insurance company is sufficient to put the owner on notice of a potential claim."[107]  In the Court's view, Claimant's repeated inquiries by e-mail and otherwise into the vessel owners' insurance coverage is equivalent to telling the owners to contact their insurance company.  When combined with the Stone Letter's recitation of the details of the collision and its proposed theory of liability, the e-mails and letters from Mr. Cook and Mr. Lamb contributed to putting the vessel owners on notice of a claim.  Read as a whole, Claimant's correspondence was clearly sent in anticipation of litigation.

Claimant makes much of the fact that Mr. Katcher refers to "this claim" in his December Letter.  Having already determined that the Stone Letter, alone or in combination with the remaining body of Claimant's correspondence, provides written notice of a claim, the Court does not reach the implications of Mr. Katcher's statement.  The Court agrees with Limitation Plaintiffs that it is Claimant's correspondence that must be examined for written notice of a claim and not the vessel owners' responses.  In the same vein, Mr. Stone's verbal reassurance to Mr. Katcher that he does not typically sue individuals without insurance is peripheral to the Court's analysis and of limited significance.  While Limitation

---

[107] *Beesley's*, 956 F. Supp. at 541 (citing *Complaint of Bayview Charter Boats, Inc.*, 692 F. Supp. 1480, 1485–86 (E.D.N.Y. 1988)).

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 28 of 30

Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 28 of 30

Plaintiffs contend that Mr. Stone's statement lulled them into a sense of false security, in doing so, they betray some understanding that Claimant's written communications signaled to them that he had at least a potential claim and was considering whether it was worth pursuing.[108]  Moreover, Mr. Stone's preferred litigation tactics do not bear on whether Claimant had the reasonable possibility of a claim, or whether Limitation Plaintiffs received written notice of that fact.

Lastly, although Limitation Plaintiffs stress the burden on vessel owners who must front equity and spend resources to file suit in federal court, those burdens are slight in comparison to the benefits they stand to reap from the protections of the Act.[109]  This is particularly true here where Limitation Plaintiffs' approximate their interest in the Nautique as $15,000 but where the underlying claim is for wrongful death.[110]  Thus, while it is important that a written notice be clear, vessel owners cannot ignore what is commonsensically a written notice of a claim in the

---

[108] The Court agrees with Claimant that it is reasonable to assume on some level that a party repeatedly asking about insurance coverage for damages from a collision has an actual or potential claim.  At oral argument, counsel for Limitation Plaintiffs posited that "those insurance inquiries [were] made, because, as I said before, plaintiff's counsel were trying to find out if it was worth making a claim."  Docket 38 at 2:10–13.  Implicit in this statement is an understanding that Claimant had an actual or potential claim.

[109] *See Esta Later Charters, Inc. v. Ignacio*, 875 F.2d 234, 239 (9th Cir. 1989) (""[S]hipowners are in a poor position to rely on equitable principles . . . [t]he Liability Act provides shipowners a generous measure of protection not available to any other enterprise in our society."); *see also In re the Matter of the Complaint of RLB Contracting, Inc.*, 773 F.3d 596, 602 (5th Cir. 2014) ("Assigning the risk of uncertainty to the vessel owner fits the purpose of the six-month limitation, which is 'to require the shipowner to act promptly to gain the benefit of the statutory right to limit liability.'").

[110] Docket 1 at 4, ¶ 13; Docket 1-1 at 3.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 29 of 30
Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 29 of 30

hope that a claimant will decide not to pursue the claim because of the unavailability of insurance coverage or for any other reason.

Because Limitation Plaintiffs failed to file for limitation of liability in a timely fashion, they cannot pursue this limitations action under 46 U.S.C. § 30511. Claimant is entitled to summary judgment and dismissal of the instant complaint.

## CONCLUSION

In light of the foregoing, Limitation Plaintiffs William Martz and Jane Martz's Motion for Summary Judgment at Docket 24 is DENIED. Claimant Andrew Horazdovsky's Motion for Summary Judgment at Docket 19 is GRANTED and the complaint is dismissed. The Court's June 30, 2020 injunction at Docket 17 is VACATED. The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 3rd day of November, 2020, at Anchorage, Alaska.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martzes*
Order re Motions for Summary Judgment
Page 30 of 30
Case 3:20-cv-00152-SLG   Document 39   Filed 11/03/20   Page 30 of 30

# Exhibit E

In the Matter of the COMPLAINT of William Martz and Jane Martz, as owners of a Nautique vessel, for Limitation of Liability

Case No. 3:20-cv-00152-SLG

## ORDER RE MOTION FOR INJUNCTION PENDING APPEAL

Before the Court at Docket 44 is Limitation Plaintiffs' Motion for Injunction Pending Appeal. Claimant responded in opposition at Docket 50. Limitation Plaintiffs replied at Docket 51.

## BACKGROUND

The Court set out the facts of this case in detail in its order on summary judgment at Docket 39. Briefly, Limitation Plaintiffs' son was operating their vessel when it collided with an inflatable raft being towed by Claimant Andrew Horazdovsky resulting in the death of his wife, Jennifer Horazdovsky.[1] From June through December of 2018, attorneys for Claimant sent a series of e-mails and letters to the Martzes concerning the accident.[2] Then, on June 4, 2020, Claimant initiated an action in Alaska Superior Court bringing several claims against

---

[1] Docket 1 at 3, ¶¶ 7–10.

[2] Docket 39 at 4–8 (Summary Judgment Order) (summarizing correspondence).

Limitation Plaintiffs, among others, arising under state tort law and federal maritime and admiralty law.[3]  On June 25, 2020, Limitation Plaintiffs commenced this action for limitation of liability, seeking to enjoin any action against them arising from the collision and to confine any resulting liability to the value of their interest in the vessel, which they estimate as $15,000.[4]

On June 30, 2020, finding that Limitation Plaintiffs had complied with the procedural requirements necessary to initiate an action to limit liability pursuant to 46 U.S.C. § 30511, the Court appointed a Trustee to hold title to the vessel and enjoined all claims against Limitation Plaintiffs and their property that were subject to limitation, including those claims in the state court action.[5]  The parties filed cross-motions for summary judgment and the Court heard oral argument on the motions on September 3, 2020.[6]  On November 3, 2020, the Court granted summary judgment to Claimant Andrew Horazdovsky after concluding that Limitation Plaintiffs had failed to file for limitation of liability in a timely fashion.[7]

---

[3] Docket 1 at 3–4, ¶ 11; *see also* Docket 1-1 (Horazdovsky Complaint).  The action in state court is *Horazdovsky v. Martz, et al.*, Case No. 3AN-20-06488CI.

[4] Docket 1 at 6; Docket 1 at 4, ¶ 13.

[5] Docket 17 at 5.  *See In re Complaint of Moog*, Case No. 3:19-cv-00030-DCN, 2019 WL 3849152, at *3 (D. Idaho Aug. 14, 2019); *see also* 46 U.S.C. § 30511(c) ("When an action has been brought under this section . . . all claims and proceedings against the owner related to the matter in question shall cease); Fed. R. Civ. P. Supp. R. F(3) ("On application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action.").

[6] Docket 37.

[7] Docket 39 at 29–30.

Case No. 3:20-cv-00152-SLG,  *In re Complaint of Martz*
Order re Motion for Injunction Pending Appeal
Page 2 of 15

The Court concluded that Claimant's correspondence constituted a notice of a claim, and accordingly, that Limitation Plaintiffs had failed to commence the action "within 6 months after a claimant gives the owner written notice of a claim" as required by 46 U.S.C. § 30511(a).[8] The Court vacated its June 30, 2020 injunction and entered a final judgment.[9] Limitation Plaintiffs filed a Notice of Appeal to the Ninth Circuit and now ask this Court for an injunction pending appeal.[10]

## LEGAL STANDARD

Limitation Plaintiffs' motion is primarily governed by Federal Rule of Civil Procedure 62(d), which provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."[11]

Motions for relief under Rule 62(d) are evaluated using the traditional four-factor test for a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially

---

[8] Docket 39 at 27–28.

[9] Docket 39 at 30; Docket 40 (Judgment).

[10] Docket 43 (Notice of Appeal); Docket 44 (Motion for Injunction Pending Appeal).

[11] Fed. R. Civ. P. 62(d).

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martz*
Order re Motion for Injunction Pending Appeal
Page 3 of 15
Case 3:20-cv-00152-SLG   Document 53   Filed 11/30/20   Page 3 of 15

injure the other parties interested in the proceeding; and (4) where the public interest lies."[12]  "There is substantial overlap between these and the factors governing preliminary injunctions; not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined."[13]

The first factor can be satisfied by a showing of "a strong likelihood of success on appeal" or the existence of "serious legal questions."[14]  Where the movant has only established serious questions, they must show that the balance of hardships tips sharply in their favor.[15]  "Serious questions are 'substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'"[16]  They "need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance on the merits.'"[17]  The burden is heavier with respect to the second factor, as the movant

---

[12] *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Nken v. Holder*, 556 U.S. 418, 434 (2009) (discussing four-factor test).

[13] *Nken*, 556 U.S. at 434 (citation omitted); *see also Feldman v. Ariz. Sec'y of State's Office*, 843 F.3d 366, 367 (9th Cir. 2016) ("The standard for evaluating an injunction pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction.").

[14] *Leiva-Perez v. Holder*, 640 F.3d 962, 966–68 (9th Cir. 2011) (summarizing different articulations of first factor standard).

[15] *Id.* at 970.

[16] *Gilder v. PGA Tour, Inc.,* 936 F.2d 417, 422 (9th Cir. 1991) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)).

[17] *Id*. (quoting *Republic of the Philippines*, 862 F.2d at 1362).

Case No. 3:20-cv-00152-SLG,  *In re Complaint of Martz*
Order re Motion for Injunction Pending Appeal
Page 4 of 15
Case 3:20-cv-00152-SLG   Document 53   Filed 11/30/20   Page 4 of 15

must show that "irreparable injury is the more probable or likely outcome."[18]  "Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest."[19]  The Ninth Circuit has emphasized that "'[t]he first two factors . . . are the most critical,' and the last two steps are reached '[o]nce an applicant satisfies the first two factors.'"[20]

Ultimately, an injunction pending appeal is an exercise of judicial discretion; it is an extraordinary remedy and depends on the circumstances of the particular case.[21]

## DISCUSSION

Limitation Plaintiffs contend that the Court should reinstitute its injunction while their appeal is pending on either of two grounds: (1) because 46 U.S.C. § 30511(c) contemplates that an injunction remain in place as long as an action is

---

[18] *Leiva-Perez*, 640 F.3d at 968.

[19] *Nken*, 556 U.S. at 435.

[20] *Washington v. Trump*, 847 F.3d 1151, 1164 (9th Cir. 2017) (alterations in original) (citation omitted) (quoting *Nken*, 556 U.S. at 434, 435).

[21] *United States v. Mitchell*, 971 F.3d 993, 999 (9th Cir. 2020) (characterizing stay pending appeal as an "extraordinary remedy"); *Washington*, 847 F.3d at 1164; *Alliance for the Wild Rockies v. Kruger*, 35 F. Supp. 3d 1259, 1270 (D. Mont. 2014) ("This maxim carries particular significance when a plaintiff seeks an injunction pending appeal following the court's resolution of the case and its dissolution of a preliminary injunction . . . .").

Case No. 3:20-cv-00152-SLG,  *In re Complaint of Martz*
Order re Motion for Injunction Pending Appeal
Page 5 of 15

Case 3:20-cv-00152-SLG   Document 53   Filed 11/30/20   Page 5 of 15

pending and/or (2) because they can establish all four elements for an injunction pending appeal under Rule 62(d).[22] The Court will address each in turn.

Injunction pursuant to 46 U.S.C. § 30511

Limitation Plaintiffs contend that an injunction pending appeal is mandatory where, as here, the Court determined that the statutory requirements of 46 U.S.C. § 30511 were met.[23] They contend that the injunction should be put back in place since the action is ongoing for as long as the appeal is pending.[24] Claimant responds that Limitation Plaintiffs cite no authority for their position and contends that this Court correctly vacated the injunction in light of its dismissal of the case.[25]

46 U.S.C. § 30511 provides that an "action must be brought within 6 months after a claimant gives the owner written notice of a claim" and that "[w]hen an action has been brought under this section and the owner has complied with subsection (b), all claims and proceedings against the owner related to the matter in question shall cease."[26] Although this Court previously issued an injunction, finding that Limitation Plaintiffs had complied with the necessary procedural requirements,[27] it

---

[22] Docket 45 at 9.

[23] Docket 45 at 19–20.

[24] Docket 45 at 20; Docket 51 at 5–7.

[25] Docket 50 at 2–3.

[26] 46 U.S.C. § 35011(a).

[27] Docket 17 at 4–5.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martz*
Order re Motion for Injunction Pending Appeal
Page 6 of 15
Case 3:20-cv-00152-SLG   Document 53   Filed 11/30/20   Page 6 of 15

has since found that Limitation Plaintiffs' action was untimely.[28]  Effectively, this Court has concluded that Limitation Plaintiffs had not brought a viable action under the statute.  The Court's conclusion aligns with Supplemental Rule F of the Federal Rules of Civil Procedure: that rule provides for an injunction "[u]pon compliance by the owner with the requirements of subdivision (1) of this rule," which in turn requires that the vessel owner file a complaint "[n]ot later than six months after receipt of a claim in writing."[29]  Because the Court found that Limitation Plaintiffs did not satisfy this six-month filing requirement, they are not in compliance with the requirements of the rule, and are not entitled to an injunction under the statute.

Moreover, Limitation Plaintiffs' position that the injunction is mandatory under the Limitation Act for so long as an action is pending on appeal is directly at odds with decisions both of the Supreme Court and the Ninth Circuit holding that "district courts . . . have discretion to stay or dismiss Limitation Act proceedings to allow a suitor to pursue his claims in state court."[30]

Injunction pursuant to Rule 62

Alternatively, Limitation Plaintiffs contend that they are entitled to an injunction pending appeal under Rule 62.

---

[28] *See generally* Docket 39.

[29] Fed. R. Civ. P. Supp. F(1), (3).

[30] *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 454 (2001) (summarizing circumstances in which an injunction of state court proceedings is unjust); *Ross Island Sand & Gravel v. Matson*, 226 F.3d 1015, 1017 (9th Cir. 2000) ("A district court, as a general rule, enjoys broad discretion to decide whether to dissolve an injunction under the Limitation of Liability Act.").

Case No. 3:20-cv-00152-SLG,  *In re Complaint of Martz*
Order re Motion for Injunction Pending Appeal
Page 7 of 15
Case 3:20-cv-00152-SLG   Document 53   Filed 11/30/20   Page 7 of 15

### 1. Likelihood of Success on the Merits

Limitation Plaintiffs maintain that there is a strong likelihood that the Ninth Circuit will hold that the limitation period for filing was not triggered until Claimant filed an action in state court.[31] They contend that the Court erred in its interpretation of Claimant's correspondence and maintain that "[n]o court has found sufficient notice in similar circumstances."[32] They add that they need only show "serious questions" going to the merits because the equities tip sharply in their favor and that serious questions "abound," not least because the Ninth Circuit has never addressed the question of what constitutes notice of a claim under the Limitation of Liability Act.[33]

Claimant disputes that Limitation Plaintiffs have shown either a likelihood of success on the merits or serious questions.[34] He acknowledges that the Ninth Circuit has not weighed in on the correct test to determine the adequacy of a written notice of a claim, but maintains that the correspondence in this case "satisfies all the elements of any existing test."[35]

---

[31] Docket 45 at 12.

[32] Docket 45 at 11–12.

[33] Docket 45 at 13. Limitation Plaintiffs identify other questions arising from the specific facts of the correspondence. Docket 45 at 13.

[34] Docket 50 at 3–4.

[35] Docket 50 at 4.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martz*
Order re Motion for Injunction Pending Appeal
Page 8 of 15
Case 3:20-cv-00152-SLG   Document 53   Filed 11/30/20   Page 8 of 15

The Court finds that Limitation Plaintiffs have not shown a likelihood of success on the merits. In its order on summary judgment, this Court applied the "reasonable possibility" test, which has been adopted in one form or another by several Circuit Courts.[36] The Court considered the substance and style of the parties' correspondence, as well as its broader context, before concluding that it provided sufficient notice of a claim.[37] In challenging the Court's order in this motion, Limitation Plaintiffs rely heavily on the requirements of the so-called *Moreira/Richardson* test, which requires that a notice of a claim include a demand of right.[38] The Court expressly declined to adopt this test, finding its rigidity unsuitable for the fact-intensive inquiry into what constitutes a notice of a claim, and noting that the Eleventh Circuit has characterized the test as having "fallen into desuetude."[39]

Nevertheless, the Court recognizes that there exist several tests for determining what constitutes a notice of a claim under the Limitation of Liability Act as well as an absence of controlling Ninth Circuit authority. Accordingly, the Court

---

[36] Docket 39 at 21–23 (describing tests adopted by the Second, Fifth, Seventh, and Eleventh Circuits).

[37] Docket 39 at 23–29.

[38] Docket 45 at 10–11 ("A notice of claim must communicate that the claimant will demand something from the person receiving the notice."); Docket 51 at 10 ("They'll be hard pressed, for example, to show where in their lawyers' correspondence they made a '*demand* of a right or supposed right. . . .'").

[39] *Orion Marine Constr., Inc. v. Carroll*, 918 F.3d 1323, 1331 (11th Cir. 2019) (discussing *Rodriguez Moreira v. Lemay*, 659 F. Supp. 89, 91 (S.D. Fla. 1987)).

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martz*
Order re Motion for Injunction Pending Appeal
Page 9 of 15
Case 3:20-cv-00152-SLG   Document 53   Filed 11/30/20   Page 9 of 15

assumes for purposes of this motion that Limitation Plaintiffs have raised serious questions going to the merits.

### 2. Likelihood of Irreparable Harm

Limitation Plaintiffs contend that, absent an injunction, they will suffer three distinct harms. First, they contend that they will suffer financial hardship from ongoing litigation costs as well as from a potential judgment in state court. They acknowledge that costs are not typically considered irreparable harm, but emphasize that they would suffer the loss of immunity from such costs that the Limitation of Liability Act provides.[40] Second, Limitation Plaintiffs contend they will suffer intangible injury to their peace of mind from the ongoing suit, which they allege might result in "ruinous liability."[41] Third, they contend they will potentially endure irreparable harm to their right to relief on appeal; they speculate that the state court action could reach a verdict before the Ninth Circuit resolves the appeal thereby potentially rendering moot their appeal.[42]

Claimant disputes that Limitation Plaintiffs will face financial hardship, emphasizing that they have not provided any evidence by way of affidavit or otherwise of the financial impact of the pending litigation.[43] He contends that,

---

[40] Docket 45 at 15–16.

[41] Docket 45 at 16–17.

[42] Docket 45 at 17.

[43] Docket 50 at 6.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martz*
Order re Motion for Injunction Pending Appeal
Page 10 of 15
Case 3:20-cv-00152-SLG   Document 53   Filed 11/30/20   Page 10 of 15

whether consciously or not, Limitation Plaintiffs accepted the risks associated with not promptly filing a limitations action and cannot claim irreparable harm from the resulting impact on their peace of mind.[44]

The Court finds that Limitation Plaintiffs have not shown that they will be irreparably harmed absent an injunction pending appeal. In the first instance, it is well established that a "claim of mere financial hardship does not establish irreparable harm,"[45] and that "litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."[46] Moreover, a "loss of peace of mind" likely always accompanies financial hardship, and yet this hardship is still not considered irreparable. The Court is not persuaded that the Limitation of Liability Act compels a different conclusion. To the contrary, because the Act "is not one of immunity from liability but of limitation," Limitation Plaintiffs would have faced litigation costs and potential financial repercussions from the action in state court—as well as the corresponding loss of peace of mind—regardless of whether they prevailed on their limitations claim.[47] Finally, the Court finds it

---

[44] Docket 50 at 7–8.

[45] *Hughes v. United States*, 953 F.2d 531, 536 (9th Cir. 1992). This is not an instance where the plaintiffs have provided "detailed information to show that they are living in dire circumstances," warranting a departure from the standard rule. *See, e.g., Calvillo Manriquez v. Devos*, 345 F. Supp. 3d 1077, 1107 (N.D. Cal. 2018).

[46] *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 735 n.20 (9th Cir. 2017) (quoting *Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 24 (1974)).

[47] *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 451 (2001) (quoting *Lake Tankers Corp. v. Henn*, 354 U.S. 147, 152 (1957)).

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martz*
Order re Motion for Injunction Pending Appeal
Page 11 of 15

unlikely that the state court will render a judgment before the Ninth Circuit resolves the appeal. Regardless, the Ninth Circuit is in the better position to determine whether or not it can decide the appeal before judgment is rendered in the state court proceedings.[48]

### 3. Balance of Equities & the Public Interest

Limitation Plaintiffs contend that an injunction would cause "minimal" harm to Claimant, who could still obtain relief if he ultimately prevails on appeal, albeit with a delay.[49] They maintain that, in contrast, the harm to them from denying injunctive relief would be "substantial" as they face not only a potential judgment but also litigation expenses, which they would be unable to recoup.[50] Limitation Plaintiffs further contend that the public has an interest in "seeing a statute's objectives served."[51]

Claimant responds that an injunction "weighs seriously against [the Horazdovskys'] right to pursue their claims against parties responsible for their loss

---

[48] Fed. R. Civ. P. 62 provides that it "does not limit the power of the appellate court . . . to stay proceedings—or suspend, modify, restore, or grant an injunction—while an appeal is pending." *See In re Complaint of Three Buoys Houseboat Vacations, Ltd*., 691 F. Supp. 182, 183 (E.D. Mo. 1988) (reasoning that "[i]n the unlikely event that the state actions are set for trial prior to adjudication of plaintiff's appeal, plaintiff may file a motion for restoration of the injunction in the Court of Appeals").

[49] Docket 45 at 14. Limitation Plaintiffs add that this delay would be compensated by prejudgment interest. Docket 45 at 14.

[50] Docket 45 at 15.

[51] Docket 45 at 18.

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martz*
Order re Motion for Injunction Pending Appeal
Page 12 of 15

. . . ."[52]  He further contends that the public interest is not served by an injunction; he maintains that the Limitation of Liability Act protects a very small class of individuals.[53]

Because Limitation Plaintiffs have made only the lesser showing of serious questions going to the merits, they must also show that "the balance of hardships tips *sharply* in [their] favor."[54]  As discussed *supra*, the Court is not persuaded that Limitation Plaintiffs will likely suffer irreparable harm in the absence of an injunction.  Nor have they otherwise shown that the balance of equities tips sharply in their favor; at most, they have demonstrated that absent injunctive relief, they will incur litigation costs and possibly a judgment in excess of the value of their vessel.  In contrast, an injunction will significantly harm Claimant: "a continuation of the stay would harm the claimant's interests by interfering with the ongoing discovery process . . . the parties should be permitted to continue with discovery in state court," especially where, as here, there are multiple defendants in the state court action.[55]

---

[52] Docket 50 at 5.

[53] Docket 50 at 8–9.

[54] *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

[55] *In re Complaint of Three Buoys Houseboat Vacations, Ltd*., 691 F. Supp. 182, 183 (E.D. Mo. 1988).  *See* Docket 1-1 at 2–3.

Case No. 3:20-cv-00152-SLG,  *In re Complaint of Martz*
Order re Motion for Injunction Pending Appeal
Page 13 of 15

The Supreme Court has grappled with the tension inherent between a claimant's right to seek relief in state court pursuant to the saving to suitors' clause in the jurisdictional statute and a vessel owner's right to seek limitation of liability under the Limitation Act.[56] The Supreme Court concluded that in some circumstances, it is "just" to allow the action in state court to proceed to prevent transforming "the Act from a protective instrument to an offensive weapon by which the shipowner could deprive suitors of their common-law rights."[57] The Court finds that justice is best served here by denying an injunction pending appeal, which would prioritize Limitation Plaintiffs' right to pursue their limitation of liability claim— even though it was dismissed as untimely—at the expense of Claimant's right to pursue his state court remedies. Finally, the Court also finds that the public interest is best served by the prompt resolution of disputes.[58] Accordingly, the Court finds that the scope of relief sought by Limitation Plaintiffs is not warranted by the balance of equities or the public interest.[59]

---

[56] *See Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 450–51 (2001) (citing 28 U.S.C. § 1331).

[57] *Id.* at 449–51. *See also Jefferson Barracks Marine Serv., Inc. v. Casey*, 763 F.2d 1007, 1009 (8th Cir. 1985) (summarizing instances where Supreme Court held district court must not enjoin prosecution of claims in other courts so as not to "thwart[]" a claimant "in her attempt to employ her common law remedy in the state court").

[58] *See* Fed. R. Civ. P. 1. *See, e.g., Newton v. Shipman*, 718 F.2d 959, 963 (9th Cir. 1983) ("[M]ost often it has been found expedient to stay the limitation proceeding and try the liability issue first, thus preserving the possibility that a jury will find no liability or award less than the limitation fund and thereby moot the limitation proceeding.").

[59] Limitation Plaintiffs likely could resolve most of their concerns with a more narrowly crafted injunction—or a stipulation—precluding Claimant from executing on a state court judgment against Limitation Plaintiffs during the pendency of the Ninth Circuit appeal. *See Lewis*, 531

Case No. 3:20-cv-00152-SLG, *In re Complaint of Martz*
Order re Motion for Injunction Pending Appeal
Page 14 of 15

Because the Court finds that Limitation Plaintiffs have failed to satisfy the four-part test for obtaining an injunction pending appellate review, it will exercise its discretion to deny Limitation Plaintiffs' request.

**CONCLUSION**

In light of the foregoing, Limitation Plaintiff's Motion for Injunction Pending Appeal at Docket 44 is DENIED.

DATED this 30th day of November, 2020 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

U.S. at 450 (explaining circumstances where "stipulations, in addition to other restrictions on the state court proceedings, ensured 'beyond doubt that [the owner's] right of limitation under the Act was fully protected") (quoting *Lake Tankers Corp. v. Henn*, 354 U.S. 147, 152 (1957)) (alterations in *Lewis*); *see also Ross Island Sand & Gravel v. Matson*, 226 F.3d 1015, 1017–18 (9th Cir. 2000).

Case No. 3:20-cv-00152-SLG,  *In re Complaint of Martz*
Order re Motion for Injunction Pending Appeal
Page 15 of 15